NO. COA13-904

NORTH CAROLINA COURT OF APPEALS

Filed: 1 April 2014

STATE OF NORTH CAROLINA

v.                                    Alexander County
                                      No. 10 CRS 52031
DAVID KEITH PRICE


Appeal by the State from orders entered 28 May 2012 by
Judge Theodore S. Royster, Jr. in Alexander County Superior
Court.  Heard in the Court of Appeals 10 December 2013.

> *Attorney General Roy Cooper, by Assistant Attorney General*
> *Joseph L. Hyde, for the State.*

> *Appellate Defender Staples Hughes, by Assistant Appellant*
> *Defendant David W. Andrews, for defendant-appellee.*


ELMORE, Judge.


On 14 January 2013, David Keith Price (defendant) was
indicted by superseding indictment for possession of a firearm
by a felon under N.C. Gen. Stat. § 14-415.1.  Defendant filed
three pre-trial motions.  First, he filed a motion to dismiss in
which he argued, *inter alia*, that the North Carolina Felony
Firearms Act was unconstitutional on its face and as applied to
him.  Subsequently, he filed two motions to suppress-one to

suppress illegally obtained statements and one to suppress illegally obtained evidence. Following a motions hearing on 11 February 2013 in Alexander County Superior Court, Judge Theodore S. Royster, Jr. granted each of defendant's motions. The State now appeals. After careful consideration, we reverse.

## I. **Background**

At the motions hearing, Officer Chad Starbuck (Officer Starbuck), an enforcement officer for the North Carolina Wildlife Resources Commission, testified that on 2 December 2010 he was patrolling a portion of Alexander County, investigating reports of trespassing and hunting violations, when he encountered defendant near a deer stand in a pine forest. Defendant was in full camouflage and was carrying a hunting rifle. Officer Starbuck was in uniform, and, upon seeing defendant, he "got out of the vehicle and walked towards [defendant's] direction."

Officer Starbuck identified himself and asked defendant to produce his hunting license. Pursuant to N.C. Gen. Stat. § 113-136, wildlife enforcement officers are "authorized to stop temporarily any persons they reasonably believe to be engaging in activity regulated by their respective agencies to determine whether such activity is being conducted within the requirements

of the law, *including license requirements*." N.C. Gen. Stat. § 113-136(f) (2013) (emphasis added). Officer Starbuck also asked defendant, "how he had got to that location?" Defendant replied that his wife dropped him off on the property.

Officer Starbuck asked defendant if he was a convicted felon? Defendant answered, "yes." After further investigation, Officer Starbuck determined that defendant was in fact a felon, and he called in Officer Michael Bruce (Officer Bruce) of the Alexander County Sheriff's Department as "backup." Officer Bruce took custody of the firearm. Defendant was neither told that he was under arrest nor placed in handcuffs at any point, and he was released from the scene to his wife. He was later arrested on 16 December 2010 on a charge of being a convicted felon in possession of a firearm.

At the motions hearing, Judge Royster granted defendant's motion to dismiss:

> I'm dismissing it based upon violation of this 4th Amendment rights of the seizure at the time past the point where he said yes, I have a hunting license, here it is, past that point I think the seizure is, or the appellate cases in the US Supreme Court have ruled when you stop someone longer than is necessary to initially investigate what you're initially stopping for, and in this case it could only be a violation, possible violation of the wildlife laws, that's what he was there for, and once he determined

there was no violation of those laws any further detainment would be a seizure under the 4th Amendment. And that's the reason I'm dismissing it based upon the violation of that.

Judge Royster subsequently instructed defense counsel "to draw me an order to that effect[.]" However, the written dismissal order filed 28 May 2013 does not reference any Fourth Amendment violation; it dismisses the charge on the basis of an unconstitutional application of the Felony Firearms Act to defendant. Specifically, Judge Royster, Jr. concluded in the written order: (1) that the trial court had jurisdiction to hear and determine defendant's motion to dismiss as a violation of his constitutional rights; (2) that the Federal Firearms Act as applied was unconstitutional because defendant did not present a danger to the community; and (3) the "2004 versions of North Carolina General Statute § 14-415.1 is an unconstitutional violation of Article I, Section 30 of the North Carolina Constitution as it is an unreasonable regulation, not fairly related to the preservation of public peace and safety."[1]

---

[1] We note that conclusion 3 is an incorrect statement of law. Our analysis focuses on whether § 14-415.1 is unconstitutional as applied to defendant. We decline to address whether the statute is unconstitutional on its face, as its constitutionally has been previously upheld. *See State v. Whitaker*, 201 N.C. App. 190, 203, 689 S.E.2d 395, 403 (2009).

## II. **Standard of Review**

When reviewing the trial court's grant of a criminal defendant's motion to dismiss, we are "strictly limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law." *State v. Williams*, 362 N.C. 628, 632, 669 S.E.2d 290, 294 (2008) (quotation and citation omitted). We review the trial court's conclusions of law *de novo*. *State v. Biber*, 365 N.C. 162, 168, 712 S.E.2d 874, 878 (2011).

"The standard of review for questions concerning constitutional rights is *de novo*. Furthermore, when considering the constitutionality of a statute or act there is a presumption in favor of constitutionality, and all doubts must be resolved in favor of the act." *Row v. Row*, 185 N.C. App. 450, 454–55, 650 S.E.2d 1, 4 (2007) (citations, quotations, and ellipses omitted). Under N.C. Gen. Stat. § 15A-954(a)(1) (2013), "[t]he court on motion of the defendant must dismiss the charges stated in a criminal pleading if it determines that: [t]he statute alleged to have been violated is unconstitutional on its face or as applied to the defendant." *Id*.

### III. <u>Constitutional Violation</u>

The State makes three arguments to support its position that the trial court erred in dismissing the charge against defendant. First, the State challenges the trial court's subject matter jurisdiction. Second, the State avers that the trial court's findings of fact do not support its conclusions of law. Third, the State argues that the trial court's conclusions are erroneous as a matter of law. We will address each of these arguments in turn.

### A. <u>Subject Matter Jurisdiction</u>

The State specifically avers that the trial court lacked subject matter jurisdiction, while the case was on appeal, to enter a written order that did not accurately reflect its oral ruling at the motions hearing. The thrust of the State's argument is that because the trial court orally dismissed the charge against defendant based on a violation of his Fourth Amendment rights, the trial court lacked jurisdiction to enter a written order dismissing the charge due to an unconstitutional application of the Federal Firearms Act. We disagree.

"Whether a trial court has subject-matter jurisdiction is a question of law, reviewed *de novo* on appeal." *McKoy v. McKoy*, 202 N.C. App. 509, 511, 689 S.E.2d 590, 592 (2010). N.C. Gen.

Stat. § 15A-1448(a) sets forth the guidelines for time for entry of an appeal and jurisdiction over a case. Under N.C. Gen. Stat. § 15A-1448(a)(3), "[t]he jurisdiction of the trial court with regard to the case is divested . . . when notice of appeal has been given and the period described in [N.C.G.S. § 15A-1448(a)(1)-(2)] . . . has expired." Subsection (1) of N.C. Gen. Stat. § 15A-1448(a) provides that "[a] case remains open for the taking of an appeal to the appellate division for the period provided in the rules of appellate procedure for giving notice of appeal." *Id*. § 15A-1448(a)(1).

Rule 4 of the North Carolina Rules of Appellate Procedure allows two modes of appeal in a criminal case. First, a party may give oral notice of appeal, provided it is spoken at the time of trial. *State v. Oates*, 366 N.C. 264, 268, 732 S.E.2d 571, 574 (2012). Second, notice of appeal may be in writing and "filed with the clerk of court . . . at any time between the date of the rendition of the judgment or order and the fourteenth day after entry of the judgment or order." *Id.*

In making its argument, the State relies on *State v. Davis*, where this Court stated that the "general rule is that the jurisdiction of the trial court is divested when notice of appeal is given[.]" 123 N.C. App. 240, 242, 472 S.E.2d 392, 393

(1996) (citation omitted) (holding that the trial court was without jurisdiction to amend the judgment in the course of settling the record on appeal to reflect the intentions of the trial court when the original judgment clearly did not reflect the trial court's intentions).

Here, defendant filed three pre-trial motions which were heard at the 11 February 2013 hearing. Two of these motions, defendant's "Motion to Suppress Illegally Obtained Evidence," and defendant's "Motion to Suppress Defendant's Statements," were each less than a page in length. The third motion, defendant's "Motion to Dismiss as a Violation of Defendant's Constitutional Rights," was twenty-one pages. This motion was entirely devoted to defendant's arguments that the Felony Firearms Act violated the Second and Fourteenth Amendments, and that the Act was unconstitutional on its face and as applied to defendant. *Id*.

The trial court heard defendant's suppression arguments first. Defendant argued that Officer Starbuck illegally seized defendant's firearm pursuant to the "plain view" doctrine because Officer Starbuck lacked probable cause to believe the firearm was "contraband, or an instrumentality or evidence of a crime." The trial court moved on to the Fourth Amendment

analysis at the hearing. Following defendant's suppression arguments, the trial court ruled that it was going to grant both suppression motions because of its determination that defendant's Fourth Amendment rights had been violated by an illegally prolonged seizure of defendant. The trial court then allowed defendant to proceed and make his arguments based upon the alleged unconstitutionality of the Felony Firearms Act.

Following the argument on defendant's third motion, the trial court stated in open court that it was going to dismiss the charge of possession of a firearm by a felon based solely on its ruling that defendant's Fourth Amendment rights had been violated because defendant had been detained after the purpose of the seizure – determining whether defendant possessed a valid hunting license – had ended. However, the trial court then continued on to address whether the Felony Firearms Act was unconstitutionally applied to defendant in this instance:

> [I]n deference to you [defendant's attorney], since this is a very important question, I will find as applied to this defendant, his constitutional rights concerning the 2nd Amendment were violated.
>
> If you want to [appeal] we'll see what's going to happen, but I'm actually dismissing it not based on that grounds. She asked me to rule on the constitutionality concerning, as applied to him and I'm doing that, but I'm dismissing

it because I think his 4th Amendment right was violated[.]

The trial court then entered two orders on 28 May 2013, one granting defendant's motions to suppress and dismissing the charge based upon the Fourth Amendment violation found by the trial court, and the other granting defendant's motion to dismiss based upon the Second Amendment violations found by the trial court.

The State argues that this case is analogous to *Davis*, in which this Court determined the trial court had acted without jurisdiction when it materially amended its judgment after notice of appeal had been taken from that judgment. *Id*. In *Davis*, the defendant was convicted of felonious breaking or entering, felonious larceny, and felonious possession of stolen property pursuant to a breaking or entering. The defendant then admitted to having attained habitual felon status. *Id*. at 241, 472 S.E.2d at 393. Because the General Assembly did not intend to punish the defendant for larceny of property *and* possession of the same property that he stole, judgment needed to be arrested for either the felonious larceny or felonious possession of stolen property charge. *See State v. Perry*, 305 N.C. 225, 235, 287 S.E.2d 810, 816 (1982), *overruled in part on*

*different grounds by State v. Mumford*, 364 N.C. 394, 699 S.E.2d 911 (2010) (holding that a defendant may not be convicted and punished for both larceny of property and the possession of that same property). However, neither party moved for arrest of either judgment at trial, and the trial court did not do so *ex mero motu*. *Davis*, 123 N.C. App. at 243, 472 S.E.2d at 394. The trial court subsequently entered its written judgment, which mistakenly arrested judgment on all three underlying convictions, and sentenced the defendant solely based upon his having attained habitual felon status. *Id*. at 241, 472 S.E.2d at 393. This error having been brought to its attention, the trial court, subsequent to the defendant's having entered notice of appeal, conducted a hearing in which the State moved for arrest of judgment solely on the conviction for possession of stolen goods. *Id*. at 241-42, 472 S.E.2d at 393. The trial court then entered an amended judgment which stated in relevant part:

> The Jury returns into open court with its verdict and finds the defendant Guilty of Felonious Breaking and Entering, Larceny, and Possession of Stolen Goods.
>
> Motion is made by the State to Arrest Judgment as to Possession of Stolen Goods. Motion is allowed.
>
> IT IS THEREFORE ORDERED by the Court to

Arrest Judgment as to Possession of Stolen Goods.

*Id.* at 242, 472 S.E.2d at 393.

This Court in *Davis* vacated the "amended" judgment, reasoning:

> Our review of the trial transcript in this case reveals no motion [made at trial] by the State to arrest judgment as to the charge of possession of stolen property, and no indication that the court did so ex mero motu. Indeed, the judgment of the court, as rendered in open court, indicates that the court did not arrest judgment as to any of the three felonies for which defendant was convicted by the jury. After the court accepted the jury's verdicts, defendant admitted the existence of prior convictions necessary to establish his status as an habitual felon.

> . . . .

> Thus, we must conclude that the amended judgments do not accurately reflect the actual proceedings and, therefore, were not a proper exercise of the court's inherent power to make its records correspond to the actual facts and "speak the truth." To the contrary, it appears that the amended judgments impermissibly corrected a judicial error.

*Id.* at 243, 472 S.E.2d at 394.

In contrast, defendant in this case argued vigorously at the hearing that "as applied to [defendant] [the Felony Firearms Act] should not be applied, that it's unconstitutional. And Your Honor, even on a broader fashion we would argue that the statute is too broadly applied and does not meet the test of strict scrutiny." The trial court, after considering the arguments of defendant and the State, stated that defendant "asked me to rule on the constitutionality concerning, as applied to him and I'm doing that[.]" The trial court then ruled in part: "I will find as applied to this defendant, his constitutional rights concerning the 2nd Amendment were violated." The State then entered oral notices of appeal from the rulings granting each of defendant's three motions. One of those notices of appeal was for the trial court's granting of defendant's motion to dismiss based upon its determination that the Felony Firearms Act was unconstitutional on its face and as applied to defendant.

Unlike the factual situation in *Davis*, in this matter defendant argued the constitutionality of the Act to the trial court, and submitted a written motion, the trial court acknowledged the argument, stated that it would rule on the motion, and did so orally. The State, clearly aware that the

motion to dismiss had been decided in defendant's favor, gave notice of appeal from that motion. The trial court then reduced its ruling to writing and entered it.

We do not believe *Davis* stands for the proposition that the trial court is restricted to only including in its written judgments or orders that which it had already stated in open court. *Davis* stands for the principle that the trial court lacks jurisdiction to correct judicial errors, or address issues never litigated, by written order or judgment following valid entry of notice of appeal.

The case before us does not involve the correction of judicial error, and we hold that the events at trial, and resulting orally rendered judgment, sufficiently signaled the contents of the written order now contested by the State. We hold that the trial court had jurisdiction to enter all three of its written orders.

## B. **Findings of Fact Unsupported by Competent Evidence**

Assuming the trial court had subject matter jurisdiction, which it did, the State assigns error to the trial court's findings of facts 1, 14, 20, 22, 23, 26, and 34.

Unchallenged findings of "fact[] are presumed to be correct and are binding on appeal." *State v. Eliason*, 100 N.C. App.

313, 315, 395 S.E.2d 702, 703 (1990) (citation omitted). As such, we limit our review to whether the unchallenged facts support the trial court's conclusions of law. *Id*. "Immaterial findings of fact are to be disregarded." *In re Custody of Stancil*, 10 N.C. App. 545, 549, 179 S.E.2d 844, 847 (1971).

The challenged findings are as follows:

> 1. Defendant is a resident of Alexander County, North Carolina, and has resided in the state of North Carolina since his youth.
>
> 14. Officer Starbuck . . . searched [defendant] for weapons.
>
> 20. Defendant was held at the scene approximately 20-30 minutes before being allowed to leave.
>
> 22. Officer Starbuck testified that E-315 of the Wildlife Resources Policy Manual applies in this case.
>
> 23. The State has presented no evidence that the search of [d]efendant's person or the seizure of his weapon were consensual.
>
> 26. The crime with which Defendant was charged and convicted of [sic] did not involve any act or threat of violence and did not involve a firearm.
>
> 34. Since completing his sentences for the offense in which he was convicted the Defendant has become a reputable member of the community. Defendant's voting rights were restored in 2010 and he is able and registered to vote in Stony Point, Alexander County, North Carolina. Defendant participates in a Wildlife Commission.

Findings #14, #20, #22, and #23 are supported by the record, specifically by Officer Starbuck's testimony. Officer Starbuck testified that once he "secured the firearm [I] made sure that [defendant] had no other firearms." When asked how long defendant was held at the scene, Officer Starbuck replied: "It could have been 30 minutes. You know, it could have been 20." In addition, Officer Starbuck testified that he followed the procedure set forth in section E-315 of the Wildlife Resources Policy Manual. Finding #23 is supported by the record: Officer Starbuck searched defendant for weapons, and a statement in the chain of custody provides that the "[g]un was seized by [Officer] Starbuck [] when [defendant] came out of the woods." Finding #26 is in reference to defendant's conviction for selling and delivering marijuana and is supported by competent evidence. In support of Finding #34, Officer Starbuck testified that defendant "tended to be a prominent person in the community." However there is no evidence regarding defendant's voting rights. Finding #1 is irrelevant; however, it is supported in that defendant's hunting license states that he is a resident of Alexander County. The challenged facts are supported by competent evidence. To the extent that any of the

challenged findings are unsupported, they are immaterial to the outcome and are disregarded.

## C. Erroneous Conclusions of Law

Lastly, the State argues that the conclusions of law set out in the dismissal order are incorrect as a matter of law. We agree.

The Felony Firearms Act (the Act), codified in N.C. Gen. Stat. § 14-415.1, was enacted by the General Assembly in 1971. The Act made it unlawful for any person previously convicted of a crime punishable by imprisonment of more than two years to possess a firearm, with certain exemptions for felons whose civil rights had been restored. *Johnston v. State*, ___ N.C. App. ___, ___, 735 S.E.2d 859, 864-65 (2012) *writ allowed, review on additional issues denied*, 366 N.C. 562, 738 S.E.2d 360 (2013) *appeal dismissed*, 366 N.C. 562, 738 S.E.2d 361 (2013) *aff'd*, 749 S.E.2d 278 (2013); 1971 N.C. Sess. Laws ch. 954, § 2. Initially, the Act only prohibited felons from the possessing of "any handgun or other firearm with a barrel length of less than 18 inches or an overall length of less than 26 inches[.]" *Britt v. State,* 363 N.C. 546, 547, 681 S.E.2d 320, 321 (2009)(citation omitted). In 2004 the General Assembly amended the statute "to extend the prohibition on possession to *all* firearms by any

person convicted of any felony, even within the convicted felons own home and place of business." *Id.* at 548, 681 S.E.2d at 321 (emphasis added); Act of July 15, 2004, ch. 186, sec. 14.1, 2004 N.C. Sess. Laws 716, 737.1.

At the time defendant was charged and presently, N.C. Gen. Stat. § 14-415.1 (2013) provides:

> (a) It shall be unlawful for any person who has been convicted of a felony to purchase, own, possess, or have in his custody, care, or control any firearm or any weapon of mass death and destruction as defined in G.S. 14-288.8(c). For the purposes of this section, a firearm is (i) any weapon, including a starter gun, which will or is designed to or may readily be converted to expel a projectile by the action of an explosive, or its frame or receiver, or (ii) any firearm muffler or firearm silencer. This section does not apply to an antique firearm, as defined in G.S. 14-409.11.

Our courts have held that a felon may challenge the statute as it applies to him or her on grounds that it violates Article I, Section 30 of the North Carolina Constitution. In considering these "as-applied" challenges, we must contemplate the following five factors: "(1) the type of felony convictions, particularly whether they involved violence or the threat of violence[;] (2) the remoteness in time of the felony convictions; (3) the felon's history of law-abiding conduct

since the crime[;] (4) the felon's history of responsible, lawful firearm possession during a time period when possession of firearms was not prohibited[;] and (5) the felon's assiduous and proactive compliance with the 2004 amendment." *Whitaker*, at 205, 689 S.E.2d at 404  (quotations omitted) (citing *Britt*, 363 N.C. at 550, 681 S.E.2d at 323 (2009), *aff'd on other grounds*, 364 N.C. 404, 700 S.E.2d 215 (2010)).

In *Britt*, the plaintiff, Mr. Britt, pled guilty to the nonviolent offense of felony possession with intent to sell and deliver the controlled substance (methaqualone) in 1979.  363 N.C. at 547, 681 S.E.2d at 321.  Mr. Britt completed his probation in 1982 and his civil rights were fully restored in 1987.  *Id.*  When the 2004 amendment to the Act took effect, Mr. Britt "had a discussion with the Sheriff of Wake County, who concluded that possession of a firearm by plaintiff would violate the statute as amended in 2004.  [Mr. Britt] thereafter divested himself of all firearms, including his sporting rifles and shotguns that he used for game hunting on his own land." *Id.* at 548, 681 S.E.2d at 322.  Mr. Britt then initiated "a civil action against the State of North Carolina, alleging that N.C.G.S. § 14-415.1 as amended violat[ed] multiple rights he [held] under the United States and North Carolina

Constitutions." *Id.* at 548-49, 681 S.E.2d at 322. Our Supreme Court found the 2004 version of N.C. Gen. Stat. § 14-415.1 to be unconstitutional *as applied* to Mr. Britt because of "his long post-conviction history of respect for the law, the absence of any evidence of violence by plaintiff, and the lack of any exception or possible relief from the statute's operation[.]" *Id.* at 550, 681 S.E.2d at 323. Specifically, our Supreme Court concluded: "[I]t is unreasonable to assert that a nonviolent citizen who has responsibly, safely, and legally owned and used firearms for seventeen years is in reality so dangerous that any possession at all of a firearm would pose a significant threat to public safety." *Id.* at 550, 681 S.E.2d at 323.

Alternatively, in *Whitaker*, after applying the five factors relied upon in *Britt*, this Court found N.C. Gen. Stat. § 14-415.1 to be constitutional as applied to Mr. Whitaker who was convicted of three prior non-violent felonies, the most recent conviction on a drug charge only a few years prior, and who had notice of the 2004 amendment and demonstrated a disregard for the law despite never misusing a firearm. 201 N.C. App. at 206-07, 689 S.E.2d 404-05.

Defendant argues on appeal that the circumstances in his case are analogous to those in *Britt*, not *Whitaker*. Applying

the five-factor test enumerated in *Britt*, we are not persuaded. Defendant has two felony convictions for selling a controlled substance (marijuana) and one conviction for felony attempted assault with a deadly weapon. While defendant was convicted of the drug offenses in 1989, he was more recently convicted of the felony of attempted assault with a deadly weapon in 2003. Although there is no evidence to suggest that defendant has misused firearms, there is also no evidence that defendant has attempted to comply with the 2004 amendment to the statute. We think it noteworthy that defendant completed his sentence for the conviction of attempted assault with a deadly weapon in 2005, *after* the 2004 amendment was enacted. Therefore, he should have been on notice of the changes in legislation. When Mr. Britt learned of the 2004 amendment, he relinquished his hunting rifle on his own accord. Defendant took no such action. We conclude that facts of this case more closely align with those in *Whitaker*, not *Britt*. Given the circumstances, it is not unreasonable to prohibit defendant from possessing firearms in order to preserve public peace and safety. The trial court erred in dismissing the charge against defendant on the basis that the Act was unconstitutional as applied to him.

## IV.  **Motions to Suppress**

The State next argues that the trial court erred in granting defendant's motion to suppress his statements and the motion to suppress evidence. We agree. The crux of this issue is whether Officer Starbuck exceeded the scope of a valid stop when he asked defendant if he was a convicted felon.

Our review of a trial court's denial of a motion to suppress is "strictly limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law." *State v. Cooke*, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982). The trial court's conclusions of law are reviewed *de novo* on appeal. *State v. Hughes*, 353 N.C. 200, 208, 539 S.E.2d 625, 631 (2000).

Here, the trial court made twenty-three findings of fact in its order granting defendant's motions to suppress. The State challenges four of these findings as being unsupported by competent evidence. The remaining nineteen findings are binding on appeal. *See Eliason*, *supra*. The challenged findings are as follows:

> 13. Officer Starbuck . . . searched [defendant] for weapons.
>
> 19. Defendant was held at the scene

approximately 20-30 minutes before being allowed to leave.

21. Officer Starbuck testified that E-315 of the Wildlife Resources Policy manual applies in this case.

22. The State has presented no evidence that the search of [d]efendant's person or the seizure of the weapon were consensual.

These challenged findings mirror the challenged findings entered in the trial court's dismissal order. As discussed above, these findings were supported by substantial evidence and, therefore, are binding upon this Court. Based on the findings, the trial court concluded: (1) defendant was illegally questioned about his prior criminal record as he was not advised of his Miranda rights; (2) defendant was held beyond the time required for the investigation; (3) defendant's gun was illegally seized without a warrant, probable cause, or defendant's consent; (4) the seizure of defendant's gun was not within the written policies and procedures of the North Carolina Wildlife Resources Commission; and (5) the State failed to justify a warrantless search and seizure of defendant's property. These conclusions of law are fully reviewable on appeal. *Id.* As such, we turn to applicable principles of law

in reviewing the trial court's conclusions. *State v. Farmer*, 333 N.C. 172, 186, 424 S.E.2d 120, 128 (1993).

The Fourth Amendment to the United States Constitution and Article I, § 20 of the North Carolina Constitution prohibit unreasonable searches and seizures. *State v. McBennett*, 191 N.C. App. 734, 737, 664 S.E.2d 51, 54 (2008) (citations omitted). This constitutional protection is designed to "prevent arbitrary and oppressive interference by [law] enforcement officials with the privacy and personal security of individuals." *United States v. Martinez-Fuerte*, 428 U.S. 543, 554, 49 L. Ed. 2d 1116, 1126 (1976) (citations omitted).

It is well established that

> [l]aw enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions. Nor would the fact that the officer identifies himself as a police officer, without more, convert the encounter into a seizure requiring some level of objective justification. The person approached, however, need not answer any question put to him; indeed he may decline to listen to the questions at all and may go on his way. He may not be detained even momentarily without reasonable, objective grounds for doing so; and his refusal to listen or answer does not, without more,

> furnish those grounds. If there is no detention—no seizure within the meaning of the Fourth Amendment—then no constitutional rights have been infringed.

*Farmer*, 333 N.C. 186-87, 424 S.E.2d 120, 128-29 (citation and quotation omitted). "Seizure occurs when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen." *State v. Foreman*, 133 N.C. App. 292, 296, 515 S.E.2d 488, 492 (1999) *aff'd as modified*, 351 N.C. 627, 527 S.E.2d 921 (2000) (citation and quotation omitted). A person "subject to detention beyond the scope of the initial seizure is still seized under the Fourth Amendment." *State v. Jackson*, 199 N.C. App. 236, 241, 681 S.E.2d 492, 496 (2009).

Like seizure, deciding whether a person is in "custody" requires an objective review of the circumstances surrounding the interrogation and a determination of the effect those circumstances would have on a reasonable person. *State v. Garcia*, 358 N.C. 382, 391, 597 S.E.2d 724, 733 (2004). "A person is in custody for purposes of *Miranda* when it is apparent from the totality of the circumstances that there is a formal arrest or restraint on freedom of movement of the degree

associated with a formal arrest."  *Id*. at 396, 597 S.E.2d at 736 (quotations and citations omitted).

Defendant concedes that Officer Starbuck was allowed to stop him pursuant to N.C. Gen. Stat. § 113-136(f), which, again, authorizes an enforcement officer to make a temporary stop of a person that he reasonably believes is engaging in activity regulated by the Wildlife Resources Commission to determine whether such activity is being conducted within the requirements of the law, including license requirements.  N.C. Gen. Stat. § 113-136(f) (2013).  Defendant also acknowledges that per N.C. Gen. Stat. § 113-136(k), he was required to show a valid hunting license.  However, because he was required by law to stop, defendant maintains that the stop constituted a "seizure," and was not consensual.  Moreover, because the scope of the stop was limited to confirming or dispelling Officer Starbuck's suspicion that he was hunting within the requirements of the law, defendant argues that Officer Starbuck exceeded the scope of the stop when he asked defendant if he was a felon *after* defendant produced a valid hunting license.  The State argues that defendant was neither seized nor in custody when Officer Starbuck asked defendant whether he was a felon.

The record indicates that Officer Starbuck found defendant hunting in the woods, approached him, identified himself, and asked defendant to show his hunting license. Defendant was holding a hunting rifle. Once Officer Starbuck was satisfied that defendant held a valid license, he asked, without demanding, if defendant was a convicted felon. Defendant answered, "yes."

Here, defendant admits that he knew that the stop was valid and he knew its purpose. As such, nothing in the record indicates that defendant had an objective reason to believe that he was not free to end the conversation once he produced his hunting license. Again, law enforcement officers do not violate the Fourth Amendment simply by putting questions to a person who is willing to listen. We conclude defendant was not "seized" in the constitutional sense when Officer Starbuck asked him about his criminal history. *See Farmer*, 333 N.C. at 188-89, 424 S.E.2d at 129-30 (holding that the defendant was not "seized," briefly or otherwise, when officers approached him on a public street, identified themselves as law enforcement, displayed no weapons, and simply asked him for information concerning his identity, place of residence, and why he was covered with what appeared to be blood).

Likewise, the record does not support a conclusion that defendant was in custody at the time he was questioned—he was neither arrested nor restrained. As such, the trial court's conclusions of law #1 and #2 are erroneous. Defendant's statement that he was a felon was voluntary, and he was seized no sooner than when Officer Starbuck learned that he was a felon. Accordingly, the trial court erred in granting defendant's motion to suppress his statements.

In addition, Officer Starbuck had authority to seize defendant's rifle without a warrant. "Under the plain view doctrine, police may seize contraband or evidence without a warrant if (1) the officer was in a place where he had a right to be when the evidence was discovered; (2) the evidence was discovered inadvertently; and (3) it was immediately apparent to the police that the items observed were evidence of a crime or contraband." *State v. Grice*, ___ N.C. App. ___, ___, 735 S.E.2d 354, 357 (2012), *review allowed*, *writ allowed*, 743 S.E.2d 179 (2013) (quotations and citations omitted). "The term 'immediately apparent' in a plain view analysis is satisfied only if the police have probable cause to believe that what they have come upon is evidence of criminal conduct." *State v. Graves*, 135 N.C. App. 216, 219, 519 S.E.2d 770, 772 (1999)

(quotations and citations omitted). "Probable cause for an arrest has been defined to be a reasonable ground of suspicion supported by circumstances sufficiently strong in themselves to warrant a cautious man in believing the accused to be guilty[.]" *State v. Zuniga*, 312 N.C. 251, 259, 322 S.E.2d 140, 145 (1984) (quotations and citations omitted).

Here, the first prong of the plain view test is clearly met as Officer Starbuck was rightfully patrolling hunting grounds in accordance with his job duties. The second prong of the test is also satisfied because Officer Starbuck discovered that the rifle was contraband inadvertently when defendant admitted that he was a convicted felon. Lastly, a reasoned analysis of the record evidence suggests that Officer Starbuck had probable cause to believe that defendant committed the crime of possession of a firearm by a convicted felon. In fact, the commission of the crime could not have been more apparent— defendant, while holding his rifle, admitted that he was a convicted felon. Thus, prong three is satisfied because it certainly became immediately apparent to Officer Starbuck that the rifle was contraband once defendant confessed to being a felon. The trial court's conclusions of law #3, #4, and #5 are

erroneous. Accordingly, the trial court erred in concluding that defendant was entitled to the suppression of the gun.

## V. Conclusion

The trial court erred in granting defendant's motion to dismiss the charge on the basis that N.C. Gen. Stat. § 14-415.1 was unconstitutional as applied to defendant. Further, defendant's Fourth Amendment rights were not violated during the stop and seizure. Accordingly, the trial court also erred in concluding that defendant was entitled to the suppression of his statements and the suppression of the firearm. We reverse.

Reversed.

Judges McGEE and HUNTER, Robert, C., concur.