IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA 24-373

Filed 7 May 2025

Buncombe County, No. 22 CRS 318656-100

STATE OF NORTH CAROLINA

v.

ERIC JAMES DUCKER

Appeal by Defendant from Judgment entered 1 August 2023 by Judge David Hugh Strickland in Buncombe County Superior Court. Heard in the Court of Appeals 17 February 2025.

*Attorney General Jeff Jackson, by General Counsel Fellow Marc D. Brunton, and Solicitor General Ryan Y. Park for the State.*

*Appellate Defender Glenn Gerding, by Assistant Appellate Defender James R. Grant, for Defendant-Appellant.*

HAMPSON, Judge.

**Factual and Procedural Background**

Eric James Ducker (Defendant) appeals from a Judgment entered upon a jury verdict finding him guilty of Possession of a Firearm by a Felon. On appeal, Defendant challenges the constitutionality of N.C. Gen. Stat. § 14-415.1, which criminalizes Possession of a Firearm by a Felon, under both the Second Amendment of the United States Constitution and Article I, § 30 of the North Carolina Constitution. He challenges the statute both on its face as well as its specific

application to him in this case. The Record before us tends to reflect the following:

In 2009, Defendant pleaded guilty to Attempted Fleeing to Elude Arrest with aggravating factors, a Class I felony. N.C. Gen. Stat. § 20-141.5 (2023). In 2018, Defendant was convicted of Misdemeanor Violation of a Domestic Violence Protective Order.

In October 2022, the Buncombe County Sheriff's Department received an anonymous tip stating Defendant was openly carrying a handgun in spite of his felony conviction. Officers arrived at Defendant's work and were told he had left in his truck. An officer located Defendant and began following him, and Defendant pulled over before the officer activated his blue lights. During the stop, Defendant informed the officer he was carrying a handgun in a holster on his right hip. The officer placed Defendant under arrest.

On 6 March 2023 a Buncombe County grand jury charged Defendant with one count of Possession of a Firearm by a Felon under N.C. Gen. Stat. § 14-415.1. Defendant moved pretrial to dismiss the indictment, arguing Section 14-415.1 violated the Second Amendment of the United States Constitution and Article I, Section 30 of the North Carolina Constitution, both facially and as applied to his case. The trial court denied the motion pretrial and after Defendant renewed it following the presentation of evidence.

After trial, the jury found Defendant guilty of Possession of a Firearm by a Felon. The trial court sentenced Defendant to 13-25 months imprisonment,

suspended for a 60-day split sentence and 24 months of supervised probation. Defendant gave oral notice of appeal.

Defendant filed a Petition for Discretionary Review seeking immediate review by our Supreme Court. On 26 June 2024, that Court declined to certify the case prior to this Court's decision. *State v. Ducker*, ___ N. C. ___,. 901 S.E.2d 793, No. 115P24, 2024 WL 3249785.

## Issues

The issues on appeal are whether N.C. Gen. Stat. § 14-415.1: (I) is facially unconstitutional under the Second Amendment to the United States Constitution; (II) is unconstitutional as applied to Defendant under the Second Amendment to the United States Constitution; and (III) is unconstitutional as applied to Defendant under the North Carolina Constitution.

## Analysis

I.  Facial Constitutional Challenge

Section 14-415.1 makes it a Class G felony for "any person who has been convicted of a felony to purchase, own, possess, or have in his custody, care, or control any firearm." N.C. Gen. Stat. § 14-415.1(a). Defendant argues recent decisions of the Supreme Court of the United States render this statute facially unconstitutional under the Second Amendment.

The Second Amendment protects individuals' rights to keep and bear arms for the purposes of self-defense or for any legal purpose. *District of Columbia v. Heller,*

554 U.S. 570, 599, 171 L.Ed.2d 637 (2008); *McDonald v. City of Chicago, Ill.*, 561 U.S. 742, 750, 177 L.Ed.2d 894. Its protections are incorporated by the Fourteenth Amendment's Due Process Clause and apply to state action. *McDonald* at 791. Our State Constitution similarly provides: "A well regulated militia being necessary to the security of a free State, the right of the people to keep and bear arms shall not be infringed[.]" N.C. Const. Art. I, § 30.

Under the North Carolina Constitution, it is within the Legislature's power to regulate the right to bear arms so long as the regulation is "at least reasonable and not prohibitive, and [bears] a fair relation to the preservation of the public peace and safety." *Britt v. State*, 363 N.C. 546, 549, 681 S.E.2d 320, 322 (2009) (citations omitted). A constitutional challenge to a statute is a question of law that we review *de novo. State v. Grady*, 372 N.C. 509, 521-22, 831 S.E.2d 542, 553 (2019). Under *de novo* review "we consider the matter anew and substitute our judgment for that of the trial court." *Parks v. Johnson*, 282 N.C. App. 124, 127-28, 970 S.E.2d 290, 283 (2022). However, "we presume that laws enacted by the General Assembly are constitutional, and we will not declare a law invalid unless we determine that it is unconstitutional beyond a reasonable doubt." *Grady* at 521-22, 831 S.E.2d at 553. "The fact that a statute 'might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid.'" *State v. Thompson*, 349 N.C. 483, 491, 508 S.E.2d 277, 282 (1998) (quoting *United States v. Salerno*, 481 U.S. 739, 745, 95 L.Ed.2d 697 (1987)). To succeed on a facial challenge, a defendant "must

- 4 -

establish that no set of circumstances exists under which the act would be valid." *Id.*

We have in the past upheld Section 14-415.1 and rejected the argument it violates either State or Federal Constitutional guarantees of the right to bear arms. *See State v. Fernandez,* 256 N.C. App. 539, 545-47, 808 S.E.2d 362, 367-68 (2017); *State v. Whitaker,* 201 N.C. App. 190, 193-95, 689 S.E.2d 395, 397-98 (2009). Defendant argues recent United States Supreme Court decisions require we revisit this analysis.

Specifically, the Supreme Court's decision in *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen* modifies the standard for determining if legislation violates the Second Amendment's protections. 597 U.S. 1, 213 L.Ed.2d 387 (2022). In *Heller* and *McDonald,* the Supreme Court held the Second and Fourteenth Amendments protect an individual right to keep and bear arms for self-defense. 554 U.S. at 570; 561 U.S. at 749. Applying those decisions prior to *Bruen,* courts evaluating the constitutionality of statutes implicating that right employed a two-part analysis similar to that used in the context of other individual constitutional rights. The first step was to determine if the challenged law regulated activity within the scope of the protected right as was originally understood. *Bruen,* 597 U.S. at 18-20. Then, if the activity was protected, they would employ means-end scrutiny and determine if the government's interest justified the burden the regulation placed on the right to bear arms. *Id.* Depending upon how "core" of a right was burdened, this could mean applying either strict or intermediate scrutiny. *Id.* at 17-19.

In *Bruen,* the Supreme Court rejected the second part of this test, holding courts should not apply means-end scrutiny in the Second Amendment context:

> Despite the popularity of this two-step approach, it is one step too many. Step one of the predominant framework is broadly consistent with *Heller*, which demands a test rooted in the Second Amendment's text, as informed by history. But *Heller* and *McDonald* do not support applying means-end scrutiny in the Second Amendment context. Instead, the government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms.

*Id.*

Thus, under *Bruen,* courts apply a new two-part test to determine the constitutionality of firearms regulations. As before, the government may justify the regulation by "establishing that the challenged law regulates activity falling outside of the scope of the right as originally understood." *Id.* at 18 (citations omitted). In making this determination, "when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Id.* at 17. If the law regulates protected conduct, we then "must ascertain whether the new law is 'relevantly similar' to laws that our tradition is understood to permit, 'applying faithfully the balance struck by the founding generation to modern circumstances.' " *United States v. Rahimi,* 602 U.S. 680, 692, 219 L.Ed.2d 351 (2024) (citing *Bruen*, 597 U.S. at 29). Even if a law burdens the right to bear arms for a historically permissible reason, it may be unconstitutional if the scope of the regulation extends "beyond what

was done at the founding." *Id.* "If laws at the founding regulated firearm use to address particular problems, that will be a strong indicator that contemporary laws imposing similar restrictions for similar reasons fall within a permissible category of regulations." *Id.* The government is not required to identify a "historical twin" to the statute in question, but must identify a "well-established and representative historical analogue." *Bruen,* 597 U.S. at 30. "[E]ven if a modern-day regulation is not a dead ringer for historical precursors, it still may be analogous enough to pass constitutional muster." *Id.*

This Court has examined and upheld the constitutionality of Section 14-415.1 against facial challenge following *Bruen* and determined its provisions fall within this historical tradition of "disarming individuals who pose a threat to the safety of others." *State v. Nanes,* ___ N.C. App. ___, 912 S.E.2d 202, 209 (2025). We noted the United States Supreme Court in *United States v. Rahimi* had recognized "[s]ince the founding, our Nation's firearm laws have included provisions preventing individuals who threaten physical harm to others from misusing firearms." *Id.* at 207 (citing 602 U.S. at 690 (holding as constitutional state law disarming individuals subject to a domestic violence restraining order)). We found historical analogues in surety laws, as well as "going armed" and "affray" laws which punished the use of firearms to terrorize people with imprisonment and the forfeiture of arms. *Id.* Accordingly, we held Section 14-415.1 fell within the historical tradition of disarming individuals who pose a clear threat of physical violence to another, in particular because the statute

- 7 -

includes a provision by which certain nonviolent felons may petition to have their rights restored. *Id;* N.C. Gen. Stat. § 14-415.4(b).

We are bound by a decision made by a prior panel of this Court. *In re Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989). We note as well that our decision in *Nanes* is consistent with the emerging post-*Bruen* consensus among federal courts that felon-in-possession statutes do not facially violate the Second Amendment. *See United States v. Jackson*, 110 F.4th 1120, 1129 (8th Cir. 2024) ("Congress acted within the historical tradition when it enacted § 922(g)(1) and the prohibition on possession of firearms by felons."); *United States v. Dubois,* 94 F.4th 1284, 1293 (11th Cir. 2024) (holding *Bruen* does not abrogate prior decision holding "felons are categorically 'disqualified' from exercising their Second Amendment right under *Heller*."), *cert. granted, judgment vacated for further consideration in light of Rahimi sub nom. Dubois v. United States.,* 220 L.Ed.2d 375 (2025); *United States v. Canada*, 123 F.4th 159, 161 (4th Cir. 2024) ("No federal appellate court has held that Section 922(g)(1) is facially unconstitutional and we will not be the first.")

We additionally held in *Nanes* Section 14-415.1 does not facially violate Article I, Section 30 of the North Carolina Constitution. 912 S.E.2d at 211. As we are bound by prior decisions of this Court, we continue to hold Section 14-415.1 is facially constitutional under both the United States and the North Carolina Constitutions. *In re Civil Penalty*, 324 N.C. at 384, 379 S.E.2d at 37.

II.   Federal As-Applied Challenge

Defendant contends Section 14-415.1 is unconstitutional as applied to him because his predicate felony, Attempted Fleeing to Elude Arrest, was nonviolent in nature. He argues we should follow certain federal appellate decisions holding specific applications of the federal felon-in-possession statue unconstitutional. *See, e.g., Range v. Attorney General,* 69 F.4th 96 (3rd Cir. 2023) (holding federal felon-in-possession statute unconstitutional as applied to petitioner convicted of making a false statement to obtain food stamps), *cert. granted, judgment vacated for consideration in light of Rahimi sub nom Garland v. Range*, ___U.S.___, 219 L.Ed.2d 1313 (2024).

Defendant's as-applied challenge is not controlled by our decision in *Nanes* because our as-applied analysis was limited to the specific defendant and predicate felony at issue in that case. The defendant in *Nanes* was convicted of felony animal cruelty for violently killing his parents' pet dog and had a history of violent criminal convictions including assault and battery. 912 S.E.2d at 209-10. We held the defendant "has a demonstrated history of violence towards others" and therefore revoking his right to possess a firearm was within our nation's tradition and history of disarming individuals who pose a threat of violence towards others. *Id.*

However, we need not perform this felony-by-felony analysis to determine the constitutionality of Section 14-415.1 as applied to each individual defendant who challenges it. Prior to the Supreme Court's decision in *Bruen,* we held as-applied challenges to Section 14-415.1 to be universally unavailing because convicted felons

fall outside of the protections of the Second Amendment. *See State v. Fernandez*, 256

N.C. App. at 546-47, 808 S.E.2d at 367-68.[1]

In *Fernandez* we adopted the reasoning of the Fourth Circuit in *Hamilton v.*

*Pallozzi*, 848 F.3d 614 (2017), and *United States v. Moore*, 666 F.3d 313 (2012). In

those cases, the Fourth Circuit applied the traditional two-part analysis, beginning

with the question of whether the regulated conduct "is within the protected Second

Amendment right of 'law-abiding, responsible citizens to use arms in defense of

hearth and home.' "[2] *Hamilton*, 848 F.3d at 624 (citing *Heller*, 554 U.S. at 635). It

held any challenge to a felon-in-possession statute fails because "conviction of a felony

necessarily removes one from the class of 'law-abiding, responsible citizens' for the

purposes of the Second Amendment."[3] *Id.* at 626.

Revisiting this question following *Bruen*, the Fourth Circuit reached the same

conclusion as before. In *United States v. Hunt,* that court addressed facial and as-

applied challenges to 18 U.S.C. § 922(g)(1), the federal felon-in-possession statute.

123 F.4th 697 (2024). It held its "previous decisions rejecting as-applied challenges to

Section 922(g)(1) remain binding because they can be read 'harmoniously' with *Bruen*

---

[1] We acknowledge our opinion in *Nanes* states section 14-415.1 "undoubtedly regulates conduct that the Second Amendment's plain text covers as it revokes an individual's right to keep and bear arms following a felony conviction." 912 S.E.2d at 207. However, *Nanes* does not rely on that conclusion, which is at odds with our earlier decision in *Fernandez.*

[2] In *Bruen* the Supreme Court clarifies the right to bear arms extends outside of the home. 597 U.S. at 4.

[3] The only exceptions to this arise if the defendant receives a pardon or if the law forming the basis of the predicate felony conviction has been declared unconstitutional or otherwise unlawful. *Hamilton,* 848 F.3d at 626.

and *Rahimi* and have not been rendered 'untenable' by them." *Id.* at 703 (citations omitted). This is because those decisions relied on the determination that those convicted of felonies are not law-abiding citizens and therefore fall outside of the Second Amendment's protections entirely. This first part of the traditional analysis, determining whether the regulated conduct falls within the Second Amendment's protections, was left undisturbed by *Bruen:*

> To be sure, *Bruen* later disavowed the second step of this Court's former two-part test for considering Second Amendment challenges as "one step too many." 597 U.S. at 19, 142 S.Ct. 2111 (rejecting "means-end scrutiny"). But *Bruen* also described the first step of our former test as 'broadly consistent with *Heller.*" *Id.* And our en banc Court has concluded that *Bruen* "did not disturb" the analysis this Court conducted under that "first step," including holdings about whether a given situation is "outside the ambit of the individual right to keep and bear arms." *Bianchi*, 111 F.4th at 448.

*Id.* at 704.

Accordingly, the Fourth Circuit held *Bruen* provides "no basis for a panel to depart from this Court's previous rejection of the need for any case-by-case inquiry about whether a felon may be barred from possessing firearms." *Id.* It continued to apply the holdings of *Moore* and *Hamilton:* that those with felony convictions fall outside of the Second Amendment's protections for law-abiding citizens. *Id.*

We agree with the Fourth Circuit's reasoning. We note the United States Supreme Court in its recent jurisprudence on the matter has made it clear that prohibitions on firearm possession by felons are presumptively lawful. *See Heller*, 554

U.S. at 626 ("[N]othing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons[.]"). In *Heller,* the Court described the right guaranteed by the Second Amendment as that enjoyed by "*law-abiding, responsible citizens*[.]" *Id.* at 635 (emphasis added). In *Bruen* the Supreme Court repeated this language. 597 U.S. at 5 ("[N]one of these limitations on the right to bear arms operated to prevent law-abiding citizens with ordinary self-defense needs from carrying arms in public for that purpose.") Following *Bruen* in *United Staes v. Rahimi* the Court remarked it "does not suggest that the Second Amendment prohibits the enactment of laws banning the possession of guns by categories of persons thought by a legislature to present a special danger of misuse[.]" 602 U.S. 680, 682 (citing *Heller*, 554 U.S. at 626). It reaffirmed "that many such prohibitions, like those on the possession of firearms by 'felons and the mentally ill,' are 'presumptively lawful' " *Id.*

Although *Bruen* rejects means-end scrutiny to determine what regulations on protected conduct are acceptable, it does not affect our understanding of the types of conduct the Second Amendment protects. As the Supreme Court has repeatedly, in *Bruen* and other decisions, defined the right to bear arms as one afforded to "law-abiding citizens," nothing in *Bruen* upsets prior determinations that the possession of firearms by felons falls outside of its protections. Because we agree with the Fourth Circuit that *Bruen* does not abrogate decisions like *Hamilton* that hold as such, we are bound by our decision in *Fernandez* and continue to hold Section 14-415.1 regulates conduct outside of the Second Amendment's protections. *In re Civil Penalty*,

324 N.C. at 384, 379 S.E.2d at 37. Defendant's as-applied challenge fails and we need not reach the question of whether there is a historical tradition of similar regulations. *Id.*

III.    State As-Applied Challenge

Finally, Defendant challenges Section 14-415.1's application to him under our state constitution.

For challenges under Article I, Section 30 of the North Carolina Constitution, we must determine whether the challenged state action is "reasonable and not prohibitive" and "bear[s] a fair relation to the preservation of the public peace and safety." *Britt v. State*, 363 N.C. 546, 549, 681 S.E.2d 320, 322. To perform this analysis and determine if a convicted felon can be constitutionally disarmed under Section 14-415.1 our Supreme Court has focused on five factors:

> (1) The type of felony convictions, particularly whether they involved violence or the threat of violence
>
> (2) The remoteness in time of the felony convictions
>
> (3) The felon's history of law-abiding conduct since the crime
>
> (4) The felon's history of responsible, lawful firearm possession during a time period when possession of firearms was not prohibited
>
> (5) The felon's assiduous and proactive compliance with Section 14-415.1(a)

*State v. Whitaker*, 201 N.C. App. 190, 205, 689 S.E.2d 395, 404 (2009) (citing *Britt* at 550, 681 S.E.2d at 323). The individual making the as-applied challenge "must

present evidence which would allow the trial court to make findings of fact" as to each factor. *State v. Buddington*, 210 N.C. App. 252, 255, 707 S.E.2d 655. An appellate court does not engage in factfinding, and we base our analysis upon uncontroverted evidence presented to the trial court regardless of the trial court's factual findings. *Whitaker* at 205, 689 S.E.2d at 404.

In *Britt*, the plaintiff had pleaded guilty to the nonviolent offense of felony possession with intent to sell and deliver a controlled substance in 1979. 363 N.C. at 547, 681 S.E.2d at 321. In 2004, the Legislature amended Section 14-415.1. Previously, the statute had only prohibited felons from possessing certain types of firearms, but the amendment extended the prohibition to all firearms. *Id.* at 547, 681 S.E.2d at 321. The plaintiff, upon discussion with the Sheriff of Wake County, divested himself of all firearms, including rifles and shotguns he used for hunting *Id.* at 548, 681 S.E.2d at 322. Our Supreme Court concluded the amended statute was unconstitutional as applied to the plaintiff because of "his long post-conviction history of respect for the law, the absence of any evidence of violence by plaintiff, and the lack of any exception or possible relief from the statute's operation." *Id.* at 550, 681 S.E.2d at 323.

The circumstances in Defendant's case are not analogous to those present in *Britt*. We note at outset Defendant has not "assiduously and proactively complied" with Section 14-415.1(a), as this case stems from his violation of that statute. Defendant has not identified—and we are not aware—of any cases in which a

defendant has successfully challenged Section 14-415.1 as applied to him after being convicted under it.[4]

In *Britt,* the claimant brought an affirmative action against the State and through proactive compliance with the statute, along with the other enumerated factors, showed he was "not among the class of citizens who pose a threat to public peace and safety." *Id.* at 550, 681 S.E.2d at 323. Likewise, in *Baysden v. State* the plaintiff filed a complaint seeking a declaration holding Section 14-415.1 was unconstitutional as applied to him. 217 N.C. App. 20, 718 S.E.2d 699, *aff'd without precedential value* 366 N.C. 370, 736 S.E.2d 173 (memorandum) (2013). As we were "unable to see any material distinction between the facts at issue in the Supreme Court's decision in *Britt* and the facts at issue here," we held the plaintiff in that case had also shown Section 14-415.1 was unconstitutional as applied to him. *Id.* at 25, 718 S.E.2d at 704.

In cases in which a defendant charged with a violation of Section 14-415.1 has asserted an as-applied challenge in defense, we have consistently held those challenges fail. *See, e.g., State v. Bonetsky,* 246 N.C. App. 640, 784 S.E.2d 637 (2016)*; State v. Price,* 233 N.C. App. 386, 757 S.E.2d 309 (2014).

This does not end our inquiry, as the Supreme Court has not indicated any of

---

[4] In fact, successful challenges under the *Britt* factors are exceedingly rare, at least at the appellate level. The only examples of which we are aware are *Britt* itself and *Baysden,* which was affirmed 3-3 by our Supreme Court and has no precedential value. We note the plaintiff in *Baysden* affirmatively brought his claim in an action for declaratory judgment.

the five factors is determinative. However, Defendant has not presented evidence towards these five factors showing Section 14-415.1, as applied to him, is "an unreasonable regulation, not fairly related to the preservation of public peace and safety." *Britt* at 550, 681 S.E.2d at 323.

Although Attempted Fleeing to Elude Arrest may not directly involve violence or a threat of violence, fleeing from police officers in a vehicle shows a disregard for the safety of others, particularly as Defendant pled guilty to the charge along with three aggravating factors: speeding in excess of fifteen miles per hour, driving recklessly, and while his driver's license was revoked. *See Bonetsky* at 645, 784 S.E.2d at 641 (recognizing our inquiry should focus "on the litigant's actual conduct rather than upon the manner in which the General Assembly has categorized or defined certain offenses").

Defendant argues his felony conviction, 13 years prior to being charged under Section 14-415.1, is remote enough to weigh in his favor. The plaintiff's conviction in *Britt*, however, was 30 years old. 363 N.C. at 549, 681 S.E.2d at 322. We have rejected at least one challenge involving a conviction older than Defendant's. *See Bonetsky*, 246 NC. App. at 645-46, 784 S.E.2d at 641-42 (eighteen years). *See also Johnston v. State*, 224 N.C. App. 282, 303, 735 S.E.2d 859, 874 (2012) (noting 31-year-old predicate felony "appears to weigh in favor of plaintiff's claim" but reversing and remanding based on the trial court making insufficient findings to resolve constitutional claim).

Defendant argues he has a history of law-abiding conduct following his conviction, but he does so by minimizing his 2017 conviction for violating a Domestic Violence Protective Order. This conduct is in stark contrast to *Britt*, where "no evidence [was] presented which would indicate that plaintiff is dangerous." 363 N.C. at 550, 681 S.E.2d at 322-23.

No evidence in the record shows Defendant's history during the time he was allowed to possess a firearm.[5] Presuming Defendant's firearm possession prior to his conviction was entirely responsible and lawful, this does not outweigh each of the other four factors, particularly given Defendant's violation of the restriction placed on him as a result of his conviction.

Applying each of the *Britt* factors to this case, Section 14-415.1 is a reasonable regulation which is "fairly related to the preservation of public peace and safety" as applied to Defendant. 363 N.C. at 550, 681 S.E.2d at 323. It is not unreasonable to disarm an individual who was convicted of a felony, subsequently violated a domestic violence protective order, and chose to continue to carry a firearm in violation of the

---

[5] We note this factor has primarily been applied with regards to compliance with Section 14-415.1 by individuals convicted prior to the statute's amendment in 2004 expanding its prohibitions. *See Britt*, 363 N.C. at 550, 681 S.E.2d at 323 (noting the plaintiff's responsible use of firearms "in the seventeen years between restoration of his rights and adoption of N.C.G.S. § 14-415.1's complete ban on any possession of a firearm by him" in 2004); *Johnston*, 224 N.C. App. at 304, 735 S.E.2d at 874 (noting evidence of lawful post-conviction firearm possession between 1988 and 2004). Under the plain language of this factor, however, it appears evidence of lawful, responsible possession prior to a challenger's felony conviction should weigh in their favor. *See Johnston*, 224 N.C. App. at 304, 735 S.E.2d at 873 (remanding for the trial court to take additional evidence and make findings on "whether plaintiff used a firearm in a responsible, lawful manner during the events giving rise to this conviction").

law. N.C. Gen. Stat. § 14-415.1 is constitutional as applied to Defendant. The trial court did not err in rejecting Defendant's as-applied challenge under Article I, Section 30 of the North Carolina Constitution.

Thus, the trial court did not err in holding Section 14-415.1 does not violate the United States or North Carolina Constitutions, either facially or as applied to Defendant. Therefore, it did not err by denying Defendant's Motion to Dismiss. Consequently, the trial court properly entered its Judgment upon the jury's verdict.

## **Conclusion**

Accordingly, for the foregoing reasons, we conclude there was no error at trial and affirm the Judgment.

NO ERROR

Judges STROUD and TYSON concur.