McGEE, Chief Judge.
 

 *641
 
 John Wayne Bonetsky ("Defendant") appeals his conviction of possession of a firearm by a felon. Defendant contends that part of the North Carolina Firearms Act-specifically
 
 N.C. Gen. Stat. § 14-415.1
 
 , which generally prohibits felons from possessing firearms-was unconstitutional as applied to him. We affirm.
 

 I. Background
 

 Officer Donny Dellinger ("Officer Dellinger"), a member of the Burke County Narcotics Task Force, obtained a search warrant and led a search of Defendant's home on 23 April 2013. Although the warrant was not included in the record on appeal, it appears the warrant may have been based, at least in part, on the statement of a confidential informant that Defendant was selling "large amounts" of marijuana. Officers did not find any drugs during their search of Defendant's home, but they did find a shotgun, inside a gun case, inside a closet.
 

 Defendant was indicted for possession of a firearm by a felon on 9 September 2013, with Defendant's 1995 conviction for felony marijuana possession in Texas ("the 1995 Texas conviction") listed as the predicate felony. Defendant filed a "Verified Motion to Dismiss" the charge on 31 December 2014, alleging that N.C.G.S. § 14-415.1, "
 
 as applied
 
 to him[,] [was] a violation of the Constitution of the United States of America and the North Carolina Constitution." The trial court considered, and denied, Defendant's motion during
 
 *639
 
 a pretrial hearing on 15 January 2015 ("the pretrial hearing").
 

 During the pretrial hearing, the trial court also found that the 1995 Texas conviction "equate[d] to a North Carolina trafficking in marijuana" conviction. Defendant does not dispute this finding. Defendant also acknowledged during the pretrial hearing that he had been convicted in 1977 of a felony armed robbery offense in Pennsylvania ("the 1977 Pennsylvania conviction"). He denied being armed during the robbery and also denied having been convicted of a firearm offense in connection with that crime. Defendant further acknowledged that he had been convicted in 1996 of a felony "controlled substance violation[ ]" in New York ("the 1996 New York conviction"). No further evidence relating to
 
 *642
 
 the 1977 Pennsylvania and 1996 New York convictions were presented at the pretrial hearing.
 

 Before Defendant's trial began, he waived his right to a jury trial and acknowledged to the trial court that his strategy was to have his case tried quickly so he could appeal the trial court's denial of his motion to dismiss. At trial, Officer Dellinger testified that Defendant arrived home during the 23 April 2013 search of Defendant's home. Officer Dellinger testified that he spoke to Defendant about the shotgun and that Defendant was "very cooperative" and indicated he "did not realize at the time that he was not supposed to have [the shotgun] at his residence." Defendant testified at trial that he thought his right to possess a firearm in North Carolina had been restored two months before police searched his home
 
 [1]
 
 and that he had the shotgun for "personal protection" for himself and his dogs. Defendant testified he lived in the woods and sometimes encountered "wildcat[s]" and bears. The trial court convicted Defendant of possession of a firearm by a felon, gave him a suspended sentence, and placed Defendant on eighteen months of supervised probation. Defendant appeals.
 

 II. Standard of Review
 

 "The standard of review for questions concerning constitutional rights is
 
 de novo.
 
 "
 
 State v. Whitaker,
 

 201 N.C.App. 190
 
 , 192,
 
 689 S.E.2d 395
 
 , 396 (2009),
 
 aff'd,
 

 364 N.C. 404
 
 ,
 
 700 S.E.2d 215
 
 (2010). However, it is well-established that "when considering the constitutionality of a statute or act there is a presumption in favor of constitutionality, and
 
 *643
 
 all doubts must be resolved in favor of the act."
 
 Id.; accord
 

 District of Columbia v. Heller,
 

 554 U.S. 570
 
 , 627-28 n. 26,
 
 128 S.Ct. 2783
 
 , 2817-18 n. 26,
 
 171 L.Ed.2d 637
 
 , 678 n. 26 (2008) ( " [P]rohibitions on the possession of firearms by felons ... [are] presumptively lawful[.]"). Yet, "[o]nce error is shown, the State bears the burden of proving the error was harmless beyond a reasonable doubt."
 
 State v. Graham,
 

 200 N.C.App. 204
 
 , 214,
 
 683 S.E.2d 437
 
 , 444 (2009) ;
 
 see
 
 N.C. Gen.Stat. § 15A-1443(b) (2015).
 

 III. Defendant's "As Applied" Challenge
 

 A. Scope of Review
 

 As a preliminary matter, we note that Defendant raised with the trial court "as applied" challenges to N.C.G.S. § 14-415.1 under both the United States and North Carolina Constitutions. Defendant's brief before this Court cites to the Second Amendment of the United States Constitution once, but he proceeds to argue only that "[a] defendant may challenge the application of
 
 *640
 
 [ N.C.G.S. § 14-415.1 ] to him or her on grounds that it violates Article I, Section 30 of the North Carolina Constitution." "It is not the role of the appellate courts ... to create an appeal for an appellant [,]"
 
 Viar v. N.C. Dep't of Transp.,
 

 359 N.C. 400
 
 , 402,
 
 610 S.E.2d 360
 
 , 361 (2005), and we must limit our review of Defendant's case accordingly.
 

 B. Defendant's Challenge
 

 Defendant contends that N.C.G.S. § 14-415.1 is unconstitutional as applied to him under Article I, Section 30 of the North Carolina Constitution. N.C.G.S. § 14415.1 imposes certain restrictions on the ability of felons to possess firearms. The General Assembly amended N.C.G.S. § 14-415.1 in 2004 ("the 2004 amendment") to prohibit felons from possessing firearms in their homes, whereas previously felons were allowed "to have possession of a firearm within his own house or on his lawful place of business."
 
 See
 
 2004 N.C. Sess. Laws. 186, § 14.1.
 
 [2]
 
 Defendant contends that the restriction in the 2004 amendment, as applied to him, was unconstitutional.
 

 The right to bear arms under Article I, Section 30 of the North Carolina Constitution "is subject to the authority of the General Assembly, in the exercise of the police power, to regulate, [although] the regulation must be reasonable and not prohibitive, and must bear
 
 *644
 
 a fair relation to the preservation of the public peace and safety."
 
 See
 

 Whitaker,
 

 201 N.C.App. at 198
 
 ,
 
 689 S.E.2d at
 
 399-400 ;
 
 but see
 

 id.
 
 at 197,
 
 689 S.E.2d at 399
 
 (citation omitted) (limiting the Court's review of that right to a felon's "as applied" challenge to N.C.G.S. § 14-415.1 and "not attempt[ing] to determine under
 
 Heller
 
 [,
 
 554 U.S. 570
 
 ,
 
 128 S.Ct. 2783
 
 ,
 
 171 L.Ed.2d 637
 
 ,] the full extent of the individual right under the Second Amendment to keep and bear arms"). Accordingly, this Court utilizes "rational basis" review for "as applied" challenges to N.C.G.S. § 14415.1 under Article I, Section 30 of the North Carolina Constitution.
 
 Id.; accord
 

 id.
 
 at 191, 202,
 
 689 S.E.2d at 395, 402
 
 (holding that
 
 Heller
 
 had "no effect" upon the level of scrutiny for "as applied" challenges to N.C.G.S. § 14-415.1 under either the Second Amendment or Article I, Section 30 );
 
 but see
 

 Johnston v. State of N.C.,
 

 224 N.C.App. 282
 
 , 293-94, 297,
 
 735 S.E.2d 859
 
 , 868-71 (2012) (relying on
 
 Heller
 
 and
 
 U.S. v. Chester,
 

 628 F.3d 673
 
 (4th Cir.2010), to utilize "intermediate scrutiny" for an "as applied" challenge to N.C.G.S. § 14-415.1 under the Second Amendment; noting that "use of the rational basis standard may [no longer] be appropriate" for examining a defendant's "as applied" challenge to N.C.G.S. § 14-415.1 under Article I, Section 30 ; but also noting that the Court was "bound by precedent" to do so),
 
 aff'd per curiam,
 

 367 N.C. 164
 
 ,
 
 749 S.E.2d 278
 
 (2013).
 

 When determining whether N.C.G.S. § 14-415.1 is unconstitutional as applied to a particular felon, this Court is required to examine five factors:
 

 (1) the type of felony convictions, particularly whether they involved violence or the threat of violence, (2) the remoteness in time of the felony convictions; (3) the felon's history of law-abiding conduct since the crime, (4) the felon's history of responsible, lawful firearm possession during a time period when possession of firearms was not prohibited, and (5) the felon's assiduous and proactive compliance with the 2004 amendment.
 

 Whitaker,
 

 201 N.C.App. at 205
 
 ,
 
 689 S.E.2d at
 
 404 (citing
 
 Britt v. State,
 

 363 N.C. 546
 
 , 549-50,
 
 681 S.E.2d 320
 
 , 322-23 (2009) ) (quotation marks and brackets omitted). As offshoots of the last
 
 Whitaker
 
 factor, our appellate courts also have taken note of (a) whether a felon proactively initiated an action to challenge the constitutionality of N.C.G.S. § 14-415.1 or waited to bring his constitutional challenge after being charged with possession of a firearm by a felon,
 
 see
 

 Baysden v. State of N.C.,
 

 217 N.C.App. 20
 
 , 26,
 
 718 S.E.2d 699
 
 , 704 (2011),
 
 aff'd per curiam,
 

 366 N.C. 370
 
 ,
 
 736 S.E.2d 173
 
 (2013), and (b) whether the felon was, or should have been, on notice of the 2004 amendment,
 
 see
 

 *645
 

 State v.
 

 *641
 

 Price,
 

 233 N.C.App. 386
 
 , 398,
 
 757 S.E.2d 309
 
 , 317,
 
 appeal dismissed,
 

 367 N.C. 508
 
 ,
 
 759 S.E.2d 90
 
 (2014) ;
 
 Whitaker,
 

 201 N.C.App. at 206
 
 ,
 
 689 S.E.2d at 405
 
 . However, as to the matter of notice, this Court has never held that a defendant's ignorance of the requirements of N.C.G.S. § 14-415.1 should weigh in his or her favor when this Court reviews an "as applied" challenge to that section.
 
 Cf.
 

 Price,
 

 233 N.C.App. at 398
 
 ,
 
 757 S.E.2d at 317
 
 (noting that the felon was in prison when the 2004 amendment was enacted and, "[t]herefore, he should have been on notice of the changes in legislation");
 
 Whitaker,
 

 201 N.C.App. at 206
 
 ,
 
 689 S.E.2d at 405
 
 (noting that the felon was warned multiple times by law enforcement that he could not possess firearms and was "flagrantly" violating the statute).
 

 1. Type of Felony Convictions
 

 In the present case, as to the first
 
 Whitaker
 
 factor, regarding "the type of felony convictions" at issue and "whether they involved violence or the threat of violence,"
 
 Whitaker,
 

 201 N.C.App. at 205
 
 ,
 
 689 S.E.2d at 404
 
 (quotation marks and brackets omitted), the trial court found at the pretrial hearing that the nature of Defendant's 1977 Pennsylvania and 1996 New York convictions were "ambiguous[.]" Regarding the 1995 Texas conviction, the trial court found that "trafficking convictions, as drug offenses, at least involve a threat of violence." Defendant contends the trial court's finding regarding his 1995 Texas conviction was made in error. We agree.
 

 Defendant directs this Court to
 
 Baysden,
 

 217 N.C.App. at 28
 
 ,
 
 718 S.E.2d at 705
 
 , which held that trial courts must "focus on the litigant's
 
 actual conduct
 
 rather than upon the manner in which the General Assembly has categorized or defined certain offenses" for the purposes of "as applied" challenges to N.C.G.S. § 14-415.1. (emphasis added). Moreover, as Defendant correctly points out, N.C. Gen.Stat. § 90-95(h) (2015), which defines the felony of "trafficking in marijuana" under North Carolina law, does not even include violence or a threat of violence as an element of the offense. In the present case, the trial court was presented with no evidence that any violence or threat of violence was involved in the crime leading to Defendant's 1995 Texas conviction. Accordingly, the trial court erred by finding that Defendant's 1995 Texas conviction "involve[d] a threat of violence."
 

 2. Remoteness in Time of the Felony Convictions and
 

 3. History of Law-Abiding Conduct Since the Crimes
 

 As to the second and third
 
 Whitaker
 
 factors, regarding "the remoteness in time of the felony convictions" and "the felon's history of
 
 *646
 
 law-abiding conduct since the crime[s,]"
 
 Whitaker,
 

 201 N.C.App. at 205
 
 ,
 
 689 S.E.2d at 404
 
 (quotation marks and brackets omitted), the trial court found that there was "no evidence of any other convictions" beyond those admitted to by Defendant and that the otherwise unfruitful search of Defendant's home by law enforcement did not "tend to indicate a lack of law-abiding conduct." The trial court made no findings regarding the remoteness of the 1977 Pennsylvania or 1996 New York convictions. It did make a finding regarding the 1995 Texas conviction and concluded that "you're really only judging [Defendant's] conduct from the point at which he was released" from prison. Accordingly, the trial court "gauge[d] ... the remoteness" of the 1995 Texas conviction at thirteen years-instead of eighteen years, which was the number of years that had passed between the 1995 Texas conviction and when Defendant's shotgun had been confiscated. Defendant contends that finding was made in error. We agree.
 

 Defendant correctly notes in his brief that
 
 Britt,
 

 363 N.C. at 550
 
 ,
 
 681 S.E.2d at 323
 
 , and
 
 Whitaker,
 

 201 N.C.App. at 206
 
 ,
 
 689 S.E.2d at 404
 
 , specifically analyze the defendants' conduct in terms of their "law-abiding conduct[,]" or lack thereof, since their "crime[s]" or "conviction[s.]" Moreover, while it could be conceivable that a trial court might weigh less-heavily a defendant's "law-abiding conduct" while he was in prison, it also would be
 
 highly
 
 relevant to an "as applied" challenge to N.C.G.S. § 14415.1 if that defendant engaged in criminal activity while incarcerated or somehow obtained a contraband firearm during that time. Accordingly, the trial
 
 *642
 
 court erred by finding the "remoteness" of Defendant's 1995 Texas conviction to be thirteen years and by examining Defendant's conduct only after the date of his release.
 

 4. History of Responsible, Lawful Firearm Possession During a Time Period when Possession of Firearms was not Prohibited
 

 As to the fourth
 
 Whitaker
 
 factor, regarding a "felon's history of responsible,
 
 lawful
 
 firearm possession during a time period when possession of firearms was
 
 not prohibited,
 
 "
 
 Whitaker,
 

 201 N.C.App. at 205
 
 ,
 
 689 S.E.2d at 404
 
 (emphasis added) (quotation marks omitted), the trial court found that this factor was not "particularly pertinent" in the present case. Defendant contends that finding was made in error on the ground that he was responsible with his firearm during the two months between when he thought his right to possess a firearm had been restored and when his shotgun was confiscated. However, the fact that Defendant's right to possess a firearm at his home may have been restored under Texas law does not mean that right was restored under North Carolina law.
 
 See
 
 N.C. Gen.Stat. § 14-415.4 (2015) (defining the procedure for
 
 *647
 
 restoring certain felons' rights to possess firearms). In fact, Defendant does not contend on appeal that his right to possess a firearm in North Carolina was ever restored. Therefore, regardless of whether Defendant possessed his shotgun "responsibl[y]" during those two months, he had no relevant "history of responsible,
 
 lawful
 
 firearm possession during a time period when possession of firearms was
 
 not prohibited
 
 [.]"
 
 See
 

 Whitaker,
 

 201 N.C.App. at 205
 
 ,
 
 689 S.E.2d at 404
 
 (emphasis added) (quotation marks omitted). Accordingly, the trial court did not err by finding that the fourth
 
 Whitaker
 
 factor was not "particularly pertinent" in the present case.
 
 See
 
 id.
 

 5. Assiduous and Proactive Compliance with the 2004 Amendment
 

 As to the fifth
 
 Whitaker
 
 factor, regarding a "felon's assiduous and proactive compliance with the 2004 amendment[,]"
 
 Whitaker,
 

 201 N.C.App. at 205
 
 ,
 
 689 S.E.2d at 404
 
 , the trial court found there was "no indication" that Defendant had taken any "affirmative action to comply with the statute." Defendant contends that finding was made in error because "there was no reason to believe that [Defendant] was on notice of the [2004] amendment."
 

 However, as discussed above, this Court has never held that a defendant's ignorance of the requirements of N.C.G.S. § 14-415.1 should weigh in the defendant's favor when this Court reviews his or her "as applied" challenge to that section.
 
 Cf.
 

 Whitaker,
 

 201 N.C.App. at 206
 
 ,
 
 689 S.E.2d at
 
 405 ;
 
 Price,
 

 233 N.C.App. at 398
 
 ,
 
 757 S.E.2d at 317
 
 . We see no reason to deviate in the present case from the longstanding principle that a defendant's "ignorance of the law is no excuse" for his or her unlawful conduct.
 
 State v. Bryant,
 

 359 N.C. 554
 
 , 566,
 
 614 S.E.2d 479
 
 , 487 (2005),
 
 superseded by statute on other grounds as stated in
 

 State v. Moore,
 
 --- N.C.App. ----, ----,
 
 770 S.E.2d 131
 
 , 141,
 
 disc. review denied,
 

 368 N.C. 353
 
 ,
 
 776 S.E.2d 854
 
 (2015).
 

 Although there is no evidence that Defendant had "flagrantly" violated the 2004 amendment,
 
 see
 

 Whitaker,
 

 201 N.C.App. at 206
 
 ,
 
 689 S.E.2d at 405
 
 , nor is there "evidence to suggest that [D]efendant [had] misused firearms, there [also was] no evidence that [D]efendant [had] attempted to comply with the 2004 amendment to the statute[,]"
 
 see
 

 Price,
 

 233 N.C.App. at 398
 
 ,
 
 757 S.E.2d at 317
 
 , or ascertain whether he was even allowed to possess a firearm in this state. Defendant's asserted ignorance of the requirements of N.C.G.S. § 14-415.1 does not weigh in his favor.
 
 See
 

 Bryant,
 

 359 N.C. at 566
 
 ,
 
 614 S.E.2d at 487
 
 . Therefore, the trial court did not err by finding there was "no indication" that Defendant had taken any "affirmative action to comply with the statute."
 
 See
 
 id.
 

 *648
 
 C. Prejudice
 

 Because the trial court erred as to some of its findings regarding the
 
 Whitaker
 
 factors, this Court must determine whether "the error[s] [were] harmless beyond a reasonable doubt."
 
 Graham,
 

 200 N.C.App. at 214
 
 ,
 
 683 S.E.2d at
 
 444 ;
 
 see
 
 N.C. Gen.Stat. § 15A-1443(b) (2015). However, even taking those errors into account, we believe the State has established that Defendant's "as
 
 *643
 
 applied" challenge to N.C.G.S. § 14-415.1 under Article I, Section 30 of the North Carolina Constitution fails as a matter of law.
 

 The State argues that the circumstances of Defendant's case are analogous to those in
 
 Whitaker.
 
 Defendant argues that his case is more like
 
 Britt
 
 than
 
 Whitaker.
 
 In
 
 Britt,
 

 363 N.C. at 547
 
 ,
 
 681 S.E.2d at 321
 
 , the felon pleaded guilty in 1979 to felony possession with intent to sell and deliver a controlled substance. The crime "was nonviolent and did not involve the use of a firearm."
 

 Id.
 

 The felon's right to possess a firearm was restored under North Carolina law in 1987.
 

 Id.
 

 Following passage of the 2004 amendment to N.C.G.S. § 14-415.1, the felon had a discussion with the Sheriff of Wake County, who concluded that the felon would be in violation of the recently amended statute if he kept his guns.
 
 Id.
 
 at 548,
 
 681 S.E.2d at 321-22
 
 .
 

 The felon "thereafter divested himself of all firearms" and proactively brought an action challenging N.C.G.S. § 14-415.1 as applied to him.
 
 Id.
 
 at 548-49,
 
 681 S.E.2d at 322
 
 . In the thirty years since the felon's conviction of a nonviolent felony, he had "not been charged with any other crime, nor [was] there any evidence that he had misused a firearm in any way."
 
 Id.
 
 at 548,
 
 681 S.E.2d at 322
 
 . Furthermore, "no determination [had] been made by any agency or court that he [was] violent, potentially dangerous, or [was] more likely than the general public to commit a crime involving a firearm."
 

 Id.
 

 Our Supreme Court applied a rational basis test and concluded that N.C.G.S. § 14-415.1 was unconstitutional as applied to the felon.
 
 Id.
 
 at 549-50,
 
 681 S.E.2d at 322-23
 
 . The Court noted that "it is unreasonable to assert that a nonviolent citizen who has responsibly, safely, and legally owned and used firearms for seventeen years is in reality so dangerous that any possession at all of a firearm would pose a significant threat to public safety."
 
 Id.
 
 at 550,
 
 681 S.E.2d at 323
 
 .
 

 Conversely, in
 
 Whitaker,
 

 201 N.C.App. at 206
 
 ,
 
 689 S.E.2d at 404
 
 , the defendant had felony convictions in 1988 for selling and delivering cocaine, in 1989 for indecent liberties with a minor, and in 2005 for possessing cocaine. He also "demonstrated a blatant disregard for the law"
 

 *649
 
 by committing numerous misdemeanors between 1984 and his trial in 2008, many of which involved drug possession or driving while impaired.
 

 Id.
 

 He further acquired numerous firearms after the 2004 amendment, even after twice being warned by law enforcement that he was prohibited from possessing firearms.
 
 iD.
 
 at 206, 689 S.E.2D at 405. dUring a subsequent search of the defendant's home in 2006, law enforcement found eleven rifles and shotguns, for which the defendant was indicted for possession of a firearm by a felon.
 
 Id.
 
 at 191-92,
 
 689 S.E.2d at 396
 
 . Although the defendant raised an "as applied" challenge to N.C.G.S. § 14-415.1 after being indicted, this Court held that N.C.G.S. § 14-415.1 was a "reasonable regulation which [was] fairly related to the preservation of public peace and safety" as applied to the defendant.
 
 Id.
 
 at 206,
 
 689 S.E.2d at 405
 
 .
 

 The present case falls squarely between
 
 Britt
 
 and
 
 Whitaker.
 
 The
 
 Britt
 
 felon had a single felony conviction thirty years prior, whereas the
 
 Whitaker
 
 felon had numerous felony and misdemeanor convictions, and one of his felony convictions occurred the year before law enforcement found him in possession of numerous firearms. In the present case, Defendant had three prior felony convictions, coming in at seventeen, eighteen, and thirty-six years before the date of his alleged offense.
 

 The
 
 Britt
 
 felon's only felony was nonviolent, and it was "uncontested" that he exhibited "lifelong nonviolence towards other citizens" and had "thirty years of law-abiding conduct since his crime[.]"
 
 Britt,
 

 363 N.C. at 550
 
 ,
 
 681 S.E.2d at 323
 
 . The
 
 Whitaker
 
 felon, however, routinely broke the law and "flagrantly" violated the 2004 amendment by continuing to purchase firearms after twice being warned by law enforcement that he was not allowed to possess them. In the present case, there was no evidence the 1995 Texas conviction involved violence, and the trial court described the nature of Defendant's 1977 Pennsylvania and 1996 New York convictions as "ambiguous[.]" There was no evidence that Defendant had engaged in unlawful activity-notwithstanding his pending
 
 *644
 
 charge-for the approximately seventeen years since his last conviction.
 

 Finally, the
 
 Britt
 
 felon proactively brought an action challenging the application of N.C.G.S. § 14-415.1 to him, whereas the
 
 Whitaker
 
 felon waited to bring his challenge until after he was arrested and indicted for being in possession of firearms as a felon. Although Defendant contends that he believed, incorrectly, that his right to possess a firearm in North Carolina had been restored in February 2013, there also is no indication he made any attempt to ascertain whether he was actually allowed to possess a firearm in this state. In short, Defendant's conduct, while not
 
 *650
 
 "flagrant[,]" as it was in
 
 Whitaker,
 
 also was neither "assiduous" nor "proactive[,]" as it was in
 
 Britt.
 

 Although this Court is presented with a close case, we cannot say Defendant has "affirmatively demonstrated that he [was] not among the class of citizens who pose a threat to public peace and safety" and that there was no rational basis under which N.C.G.S. § 14-415.1 could apply to him.
 
 See
 

 Britt,
 

 363 N.C. at 550
 
 ,
 
 681 S.E.2d at 323
 
 . Defendant had three prior felony convictions, one of which was for armed robbery
 
 [3]
 
 and the other two occurred within the past two decades; there is no relevant time period in which he could have
 
 lawfully
 
 possessed a firearm in North Carolina; and, as a convicted felon, he did not take proactive steps to make sure he was complying with the laws of this state, specifically with the 2004 amendment to N.C.G.S. § 14-415.1.
 
 See generally
 

 Whitaker,
 

 201 N.C.App. at 205
 
 ,
 
 689 S.E.2d at
 
 404 Accordingly, this Court must defer to the "presumption in favor of constitutionality" for enactments of the General Assembly, and affirm the trial court's decision to deny Defendant's motion to dismiss.
 
 See
 

 id.
 
 at 192,
 
 689 S.E.2d at 396
 
 .
 
 [4]
 

 AFFIRMED.
 

 Judges GEER and McCULLOUGH concur.
 

 [1]
 

 Defendant previously explained at the pretrial hearing that he believed his right to possess a firearm at home in North Carolina had been restored because, according to Defendant, his right to possess a firearm at home had been restored in Texas. Defendant testified he was released from prison for the 1995 Texas conviction in 2000 and released from post-release supervision in February 2008. Defendant's shotgun was confiscated in April 2013, approximately five years and two months after he was reportedly released from post-release supervision.
 
 Tex. Penal Code Ann. § 46.04
 
 (a) (West 2011) provides that
 

 [a] person who has been convicted of a felony commits an offense if he possesses a firearm:
 

 (1) after conviction and before the fifth anniversary of the person's release from confinement following conviction of the felony or the person's release from supervision under community supervision, parole, or mandatory supervision, whichever date is later; or
 

 (2) after the period described by Subdivision (1), at any location other than the premises at which the person lives.
 

 [2]
 

 N.C.G.S. § 14-415.1 was amended again in 2006 to provide that "[t]his section does not apply to an antique firearm, as defined in G.S. 14-409.11."
 
 See
 
 2006 N.C. Sess. Laws. 259, § 7.(b).
 

 [3]
 

 Although Defendant denied being "armed" during the 1977 robbery, he did acknowledge at the pretrial hearing that he participated in the robbery.
 
 See
 

 Baysden,
 

 217 N.C.App. at 28
 
 ,
 
 718 S.E.2d at 705
 
 (holding that courts must "focus on the litigant's actual conduct rather than upon the manner in which the General Assembly has categorized or defined certain offenses.").
 

 [4]
 

 We also are unpersuaded by Defendant's contention that the trial court could not properly consider the 1977 Pennsylvania and 1996 New York convictions as part of Defendant's "as applied" challenge to N.C.G.S. § 14-415.1, on the ground that those "convictions were not included in [his] indictment" for possession of a firearm by a felon. At Defendant's trial, "the State need[ed] only [to] prove two elements to establish the crime of possession of a firearm by a felon: (1) [D]efendant was previously convicted of
 
 a
 
 felony; and (2) thereafter possessed a firearm." "
 
 See
 

 State v. Wiggins,
 

 210 N.C.App. 128
 
 , 133,
 
 707 S.E.2d 664
 
 , 669 (2011) (emphasis added)." As for Defendant's "as applied" challenge to N.C.G.S. § 14-415,
 
 Defendant
 
 bore the burden of overcoming the "presumption in favor of [the] constitutionality" of the statute, which necessarily required the trial court to examine the
 
 Whitaker
 
 factors in light of all of Defendant's relevant criminal history.
 
 Accord
 

 Whitaker,
 

 201 N.C.App. at
 
 206 n. 6,
 
 689 S.E.2d at
 
 404 n. 6 (noting that, while the defendant's "indictments for possession of a firearm by a felon were based upon his 1988 felony conviction, ... we must consider the defendant's history of "law-abiding conduct,"
 
 Britt,
 

 363 N.C. at 550
 
 ,
 
 681 S.E.2d at 323
 
 , [and] we note his more recent felonies also for purposes of this constitutional analysis.");
 
 State v. Yuckel,
 

 217 N.C.App. 198
 
 ,
 
 719 S.E.2d 254
 
 , slip op. at 13 (2011) (unpublished) (Beasley, J., concurring) ("[T]he legal principles governing as applied challenges to the Felony Firearms Act ... make clear that the burden is on those challenging the law to prove it is unconstitutional."). Defendant's guilt of possession of a firearm by a felon and his "as applied" challenge to N.C.G.S. § 14-415.1 presented distinct inquiries for the trial court.