IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-487

Filed 19 February 2025

Wake County, Nos. 20 CR 213866-910, 213868-910, 213233-910

STATE OF NORTH CAROLINA

v.

NICHOLAS DALTON NANES, Defendant.

Appeal by Defendant from judgment entered 31 October 2023 by Judge G. Bryan Collins in Wake County Superior Court. Heard in the Court of Appeals 14 January 2025.

*Attorney General Jeff Jackson, by Special Deputy Attorney General Mary Carla Babb, for the State.*

*Sarah Holladay for Defendant.*

GRIFFIN, Judge.

Defendant Nicholas Dalton Nanes appeals from the trial court's judgment entered upon a jury verdict finding him guilty of two counts of first-degree murder and one count of possessing a firearm while a felon. Defendant raises two issues on appeal. First, whether section 14-415.1 of the North Carolina General Statutes, which prohibits convicted felons from possessing firearms, is constitutional. Second, whether the trial court erred by admitting Defendant's own statements into evidence. We hold section 14-415.1 is constitutional and Defendant received a fair trial, free from error.

## I.  Factual and Procedural Background

Between 7 August 2020 and 27 August 2020, Defendant shot and killed two people whom he had never met.  The evidence presented at trial tended to show the following:

In the early morning of 7 August 2020, Raleigh Police Officers responded to a report of gunshots at the Montecito West Apartment complex in north Raleigh. Officers discovered the body of Bobby Lucas lying in the parking lot with five gunshot wounds to the back of his head.  Mr. Lucas was a developmentally disabled black man who required assistance to live on his own.  No shell casings were found at the scene.

Three weeks later, on 27 August 2020 at approximately 4:00 p.m., the Cary Police Department received a report of gunshots at the Somerset neighborhood pool in Cary.The caller reported hearing five gunshots and observing an individual running through their backyard.  Upon arriving, officers discovered the body of Selva Vellingiri, an Indian man who lived with his family in the neighborhood.  Cary Police Officers recovered video footage from the Somerset pool building depicting Defendant walking through the pool parking lot at 3:15 p.m. to where Mr. Vellingiri's body would later be located.  The video also showed Defendant running from the scene approximately forty-one minutes later—around 4:06 p.m.  Law enforcement used a still of Defendant from the video to distribute a "be on the look out" notice, from which Defendant's probation officer recognized him.

One day later, on 28 August 2020, law enforcement contacted Defendant's

mother who gave them Defendant's address. Officers executed a search warrant at Defendant's residence and seized clothing which matched what the individual in the Somerset pool footage was wearing. Defendant was arrested by the Cary Police Department for possession of a firearm by a felon. While in custody, law enforcement allowed Defendant to speak with his mother on the phone while being recorded.

A Wake County grand jury indicted Defendant for the murders of both Mr. Lucas and Mr. Vellingiri as well as possession of a firearm by a felon on 14 September 2020. Defendant's matter came on for trial in Wake County Superior Court on 23 October 2023. The jury returned verdicts finding Defendant guilty of both murders and possessing a firearm. Defendant timely appeals.

## II.    Analysis

Defendant raises two issues on appeal. First, Defendant contends the trial court erred by denying his motion to dismiss the charge of possession of a firearm by a felon because, he alleges, North Carolina's statute criminalizing possession of a firearm by a felon is unconstitutional. Second, Defendant argues the trial court erred by admitting statements he made during the phone call to his mother into evidence. **{Def. B. pp. 23-33}.** We disagree.

## A. Possession of a Firearm by a Felon

Defendant challenges section 14-415.1 as both facially unconstitutional and unconstitutional as applied to him under both Section 30 of the State Constitution and the Second Amendment to the United States constitution. Specifically,

Defendant contends the United States Supreme Court's decisions in *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022), and *United States v. Rahimi*, 602 U.S. 680 (2024), render section 14-415.1 unconstitutional. As we explain below, it is not.

We review a constitutional challenge to a criminal statute de novo. *See State v. Grady*, 372 N.C. 509, 521–22, 831 S.E.2d 542, 553 ("Whether a statute is constitutional is a question of law that this Court reviews de novo." (citation omitted)). When conducting "de novo review, we consider the matter anew and substitute our judgment for that of the trial court[,]" *Parks v. Johnson*, 282 N.C. App. 124, 127–28, 870 S.E.2d 290, 283 (2022) (citations omitted); however, "we presume that laws enacted by the General Assembly are constitutional, and we will not declare a law invalid unless we determine that it is unconstitutional beyond a reasonable doubt," *Grady*, 372 N.C. at 521–22, 831 S.E.2d at 553 (citations omitted).

### 1. Second Amendment

The Second Amendment of the United States constitution provides, "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. The right to keep and bear arms is a fundamental right and is protected against state action through the Fourteenth Amendment's Due Process Clause. *See McDonald v. City of Chicago, Ill.*, 561 U.S. 742, 750 (2010) (holding the Fourteenth Amendment incorporates the Second Amendment's protections against the states). This right, however, is not unlimited. *Rahimi*, 602 U.S. at 690–91 (citing *District of Columbia*

*v. Heller*, 554 U.S. 570, 626 (2008)).  The federal and state governments may regulate firearms, but "when the Second Amendment's plain text covers an individual's conduct, the [c]onstitution presumptively protects that conduct."  *Bruen*, 597 U.S. at 17.   When a party challenges a firearm restriction, "the government must affirmatively prove [the] regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms."  *Id.* at 19.   Only after the government has made this showing "may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'"  *Id.* at 17 (quoting *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50, n. 10 (1961)).

Therefore, in determining the constitutionality of a firearm regulation, we "must ascertain whether the new law is 'relevantly similar' to laws that our tradition is understood to permit, 'applying faithfully the balance struck by the founding generation to modern circumstances.'"  *Rahimi*, 602 U.S. at 692 (quoting *Bruen*, 597 U.S. at 29).   "Why and how the regulation burdens the right are central to this inquiry."  *Id.*  Accordingly, "if laws at the founding regulated firearm use to address particular problems, that will be a strong indicator that contemporary laws imposing similar restrictions for similar reasons fall within a permissible category of regulations."  *Id.*  However, even if the regulation is passed for a permissible reason, the scope of the modern regulation may not extend "beyond what was done at the founding."  *Id.*

This analysis requires the government to show the regulation "comport[s] with

the principles underlying the Second Amendment, but [the regulation] need not be a 'dead ringer' or a 'historical twin.'" *Id.* (quoting *Bruen*, 597 U.S. at 30). Statutes prohibiting convicted felons and the mentally ill from possessing firearms are presumptively lawful. *Heller*, 554 U.S. at 626–27, n. 26; *see also McDonald*, 561 U.S. at 786 ("We made it clear in *Heller* that our holding did not cast doubt on such longstanding regulatory measures as 'prohibitions on the possession of firearms by felons and the mentally ill[.]'"); *Rahimi*, 602 U.S. at 699 ("[*Heller*] stated that many such prohibitions, like those on the possession of firearms by 'felons and the mentally ill,' are 'presumptively lawful.'" (quoting *Heller*, 554 U.S. at 626–27, n. 26)).

*a. Facial Challenge*

A facial challenge is the most onerous challenge a party may make to the constitutionality of a statute "because it requires a defendant to establish that no set of circumstances exists under which the [statute] would be valid." *Rahimi*, 602 U.S. at 693 (quoting *U.S. v. Salerno*, 481 U.S. 739, 745 (1987)). Thus, the State must only show that section 14-415.1 "is constitutional in some of its applications." *Id.*

At the outset, we note that section 14-415.1 undoubtedly regulates conduct that the Second Amendment's plain text covers as it revokes an individual's right to keep and bear arms following a felony conviction. Resultingly, "the [c]onstitution presumptively protects that conduct." *Bruen*, 597 U.S. at 17. Regardless of this presumption, section 14-415.1 is sufficiently analogous to historical laws to show that prohibiting convicted felons from possessing firearms is within the nation's history

and tradition of firearm regulation.

The United States Supreme Court held in *Rahimi* that "[s]ince the founding, our Nation's firearm laws have included provisions preventing individuals who threaten physical harm to others from misusing firearms." *Rahimi*, 602 U.S. at 690. There, the defendant was subject to a domestic violence protection order, which, under 18 U.S.C. § 922(g)(8), prohibited him from possessing or using a firearm. *Id.* at 684–87. The defendant, despite this restriction, committed a series of firearm-related crimes resulting in his arrest. *Id.* at 687. Following his arrest, law enforcement discovered multiple other firearms at his residence, after which a grand jury indicted him for violating section 922(g)(8). *Id.* at 687–88. On appeal, the defendant argued section 922(g)(8) impermissibly infringed upon his Second Amendment right to keep and bear arms. *Id.* at 689.

Surveying the nation's historical legal landscape, the Court cited numerous firearm regulations as evidence that "[a]n individual found by a court to pose a credible threat to the physical safety of another may be temporarily disarmed consistent with the Second Amendment." *Id.* at 693–99, 702. Specifically, the Court analyzed surety laws requiring "those persons, [of] whom there is a probable ground to suspect of future misbehaviour, to stipulate with and to give full assurance . . . that such offence . . . shall not happen, by finding pledges or securities." *Id.* at 695 (quoting 4 W. Blackstone, Commentaries on the Laws of England 251 (10th ed. 1878)). These laws "could be invoked to prevent all forms of violence." *Id.* Stated differently, where

there was a reasonable belief that an individual posed a danger to others, the law could require those individuals to post a bond which would be forfeited upon breaching the peace. *Id*. Alternatively, if the individual failed to post a bond, they would be imprisoned and, in consequence, disarmed. *Id*.

Additionally, the Court surveyed "going armed" and "affray" laws which prohibited individuals from using firearms to terrorize people—violation of which was punished by imprisonment and forfeiture of the arms. *Id*. at 697 (citing 4 Blackstone 149). Together, these laws represent a tradition of "what common sense suggests: [w]hen an individual poses a clear threat of physical violence to another, the threatening individual may be disarmed." *Id*. at 687.

Defendant argues the Court's holding in *Rahimi* does not apply here because the statute at issue there included a provision requiring a court to find that an individual poses "a credible threat to the physical safety" of another individual and, even then, would eventually allow him to regain his firearms license. *Rahimi* at 693. On the other hand, section 14-415.1, Defendant contends, forecloses firearm possession for any individual convicted of a felony regardless of the violent nature of the crime and does so without limiting the duration of the prohibition.[1] This argument misstates the substance of section 14-415.1 and is without merit.

Section 14-415.1(a) states that "[i]t shall be unlawful for any person who has

---

[1] Section 14-415.1 also excepts some white-collar felonies from its prohibition; however, that aspect of the statute is not at issue here.

been convicted of a felony to purchase, own, possess, or have in his custody, care, or control any firearm. . . ." N.C. Gen. Stat. § 14-415.1(a) (2023). Contrary to Defendant's categorical assertion that "all criminal defendants in North Carolina are automatically and permanently deprived of their Second Amendment rights upon conviction of nearly any felony" is section 14-415.4. Section 14-415.4, entitled "Restoration of firearm rights" provides for a "procedure that allows a North Carolina resident who was convicted of a single nonviolent felony . . . to petition the court to remove the petitioner's disentitlement under [section] 14-415.1 and to restore the person's firearms rights in this State." N.C. Gen. Stat. § 14-415.4(b) (2023). Pursuant to this statute, an individual previously convicted of a single non-violent felony who has their civil rights restored may regain their firearm rights after twenty years, N.C. Gen. Stat. § 14-415.4(d) (2023), thus undermining Defendant's arguments regarding the duration of the prohibition and the violent nature of the underlying felony.

Accordingly, sections 14-415.1 and 14-415.4, when read *in pari materia*, provide for temporary disarmament of non-violent felons initially but allow restoration of firearm rights if the individual is not a violent felon and has been a law-abiding citizen for a period of twenty years. These regulations fit comfortably within the nation's tradition of disarming dangerous individuals and substantively reflect the Court's holding in *Rahimi*. *See U.S. v. Canada*, 123 F.4th 159, 161 (4th. Cir. 2024) ("No federal appellate court has held that [the federal felon in possession of a firearm statute] is facially unconstitutional[.]")

Moreover, the United States Supreme Court has consistently reaffirmed that statutes prohibiting possession of firearms by felons and the mentally ill are "presumptively lawful." *Heller*, 554 U.S. at 626–27, n. 26; *McDonald*, 561 U.S. at 786 ("We made it clear in *Heller* that our holding did not cast doubt on such longstanding regulatory measures as 'prohibitions on the possession of firearms by felons and the mentally ill[.]'"); *Rahimi*, 602 U.S. at 699 ("In fact, our opinion stated that many such prohibitions, like those on the possession of firearms by 'felons and the mentally ill,' are 'presumptively lawful.'"). To this end, the Court in *Rahimi* upheld the constitutionality of section 922(g)(8) despite the fact that section 922(g)(8) "did not require a previous criminal conviction." *Canada*, 123 F.4th at 160–61 (citing *Rahimi*, 602 U.S. at 699). Here, unlike section 922(g)(8), section 14-415.1 affirmatively *requires* a felony conviction prior to revoking an individual's firearm rights. N.C. Gen. Stat. § 14-415.1(b)(1) (2023).

In sum, Defendant's facial challenge to the constitutionality of section 14-415.1 fails as the regulation is within the Nation's tradition and history of disarming individuals who pose a threat to the safety of others. Moreover, section 14-415.1 has a "plainly legitimate sweep" and can be applied constitutionally to numerous circumstances. For example, section 14-415.1's prohibition applies to individuals convicted of assault with a deadly weapon. *See* N.C. Gen. Stat. § 14-32(a)–(c) (2023) (criminalizing assault with a deadly weapon in various forms as a felony). Accordingly, Defendant's facial challenge to section 14-415.1 under the United States

constitution is without merit.

### b. *As-Applied Challenge*

An as-applied challenge requires a defendant to show the statute at issue is unconstitutional as applied to the facts of his specific case. *See Maryland Shall Issue, Inc. v. Moore*, 116 F.4th 211 (4th Cir. 2024) ("In an as-applied challenge, the court focuses on the circumstances of the particular [party] and whether, in light of those circumstances, the challenged law was unconstitutionally applied to *those* [parties]." (emphasis in original) (internal marks and citations omitted)).

Defendant argues section 14-415.1 is unconstitutional under the Second Amendment to the United States constitution as applied to him. Specifically, Defendant contends the predicate felony which triggered his violation of section 14-415.1, larceny of a dog and animal cruelty, are not violent crimes against people and therefore disarming him is not within the nation's tradition of disarming individuals who pose a violent threat to others. This argument is without merit.

Defendant was convicted of felony animal cruelty for stealing his parent's pet dog and then using a knife to decapitate the dog—certainly a violent crime. Even if this were not a violent felony, the record reflects Defendant has previously been convicted of other violent crimes. Specifically, the record reflects Defendant has a history of victimizing others resulting in convictions for: assault on a government official or employee, simple assault, simple assault again, assault inflicting serious injury, assault on a handicapped person, and assault and battery. *See State v. Davis*,

68 N.C. App. 238, 244, 314 S.E.2d 828, 832 (1984) ("An assault is an overt act or an attempt, or the unequivocal appearance of an attempt, *with force and violence*, to do some immediate physical injury to the person of another . . . sufficient to put a reasonable person in fear of immediate bodily harm." (cleaned up)).

Simply put, as Defendant has a demonstrated history of violence towards others, applying section 14-415.1 against him and revoking his firearm rights is again well within this nation's tradition and history of disarming individuals who pose a threat of violence towards others.

### 2. *Section 30*

In addition to Defendant's challenges under the federal constitution, Defendant contends section 14-415.1 also violates section 30 of the North Carolina State Constitution, both facially and as applied to him. Again, it does not.

Section 30 of the State Constitution states, *inter alia*, that, "[a] well regulated militia being necessary to the security of a free State, the right of the people to keep and bear arms shall not be infringed[.]" N.C. Const. art. I, § 30. Our Supreme Court has held it is within the General Assembly's police power to regulate the right to bear arms so long as the regulation is "at least reasonable and not prohibitive, and [the regulation] must be a fair relation to the preservation of the public peace and safety." *Britt v. State*, 363 N.C. 546, 549, 681 S.E.2d 320, 322 (2009) (citation and internal marks omitted).

Constitutional challenges under our State Constitution mirror those made

under the federal constitution. To succeed on a facial challenge, a defendant "must establish that no set of circumstances exists under which the act would be valid." *State v. Bryant*, 359 N.C. 554, 564, 614 S.E.2d 479, 486 (2005) (cleaned up). "[A]ny act promulgated by the General Assembly" enjoys a presumption of constitutionality and we resolve all doubt in favor of constitutionality. *State v. Harris*, 242 N.C. App. 162, 164, 775 S.E.2d 31, 33–34 (2015) (citing *State v. Fowler*, 197 N.C. App. 1, 13, 676 S.E.2d 523, 536 (2009)). An as-applied challenge, on the other hand, "represents a party's protest against how a statute was applied in the particular context in which the party acted or proposed to act[.]" *Lakins v. W. N.C. Conf. of United Methodist Church*, 283 N.C. App. 385, 393, 873 S.E.2d 667 (2022) (cleaned up). While the General Assembly has modified section 14-415.1 on numerous occasions, we have nonetheless upheld its constitutionality as applied to other individuals. *State v. Fernandez*, 256 N.C. App. 539, 548, 808 S.E.2d 362, 369 (2017) (holding section 14-415.1 constitutional as applied to the defendant); *State v. Bonetsky*, 246 N.C. App. 640, 648, 784 S.E.2d 637, 643 (2016) (holding the same).

We apply five factors to the specific facts of the case when a defendant challenges the application of section 14-415.1 to them:

> (1) the type of felony convictions, particularly whether they involved violence or the threat of violence, (2) the remoteness in time of the felony convictions; (3) the felon's history of law-abiding conduct since the crime, (4) the felon's history of responsible, lawful firearm possession during a time period when possession of firearms was not prohibited, and (5) the felon's

assiduous and proactive compliance with the 2004 amendment.

*Bonetsky*, 246 N.C. App. at 644, 784 S.E.2d at 640 (citing *State v. Whitaker*, 201 N.C. App. 190, 205, 689 S.E.2d 395, 404 (2009)); *see also Britt*, 363 N.C. at 549–50, 681 S.E.2d at 322–23 (setting forth the factor test for as-applied challenges to section 14-415.1). Pertinent to this analysis is whether the individual challenging application of section 14-415.1 voluntarily disarms themselves prior to seeking vindication of their right to bear arms or waits until they are disarmed by law enforcement and then subsequently seeks vindication. *Bonetsky*, 246 N.C. App. at 644–45, 784 S.E.2d at 640–41.

Defendant contends the *Britt* factors are inapplicable to his challenge as they were first applied in a challenge to the 2004 amendment of section 14-415.1. In 2004, the General Assembly amended a previous version of the law, which allowed convicted felons to possess firearms in their homes or businesses, to foreclose possession in all circumstances. *See Johnson v. State*, 224 N.C. App. 282, 286–88, 735 S.E.2d 859, 864–65 (2012) (discussing the history of amendments to section 14-415.1). In *Britt*, the plaintiff sought declaratory judgment that the 2004 amendment was unconstitutional as applied to him because both his civil and firearm rights had been restored prior to the amendment. *Britt*, 363 N.C. at 549–50, 681 S.E.2d at 322–23. There, the plaintiff was convicted of one felony count of possession with intent to sell and deliver a controlled substance in 1979. *Id.* The plaintiff thereafter lived a

law-abiding life and ultimately disarmed himself of the firearms he had acquired following the restoration of his rights when he learned of the 2004 amendment. *Id.* The Supreme Court, weighing the facts of the plaintiff's case, determined application of section 14-415.1 to him was "an unreasonable regulation, not fairly related to the preservation of public peace and safety." *Id.* at 550, 681 S.E.2d at 323.

While Defendant's argument is persuasive because the factual circumstances underlying the challenges are materially different, a change in the standard utilized to adjudicate these challenges must come from the General Assembly or a higher court as binding precedent requires us to apply the *Britt* factors when a defendant challenges section 14-415.1 as applied to them. *See Fernandez*, 256 N.C. App. at 547–48, 808 S.E.2d at 368–69 (utilizing the *Britt* factors to analyze an as-applied challenge to section 14-415.1 where the predicate felony was committed after 2004); *see also In re O.D.S.*, 247 N.C. App. 711, 721–22, 786 S.E.2d 410, 417 (2016) ("One panel of this Court cannot overrule a prior panel of this Court, or our Supreme Court." (citing *In re Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989)).

Here, regarding Defendant's previous felony convictions, on 8 November 2017 he was convicted of animal cruelty because he stole and then used a knife to decapitate his parent's dog while on post-release supervision for another crime. Defendant was also convicted of larceny of a motor vehicle in 2019, although the record does not reflect whether Defendant used violence or the threat of violence when committing this offense. "In addition to his felony convictions, [D]efendant has

demonstrated a blatant disregard for the law as he has been convicted of numerous misdemeanors:" disorderly conduct by abusive language in 2010, assault on a government employee or official in 2010, simple assault in 2010, larceny in 2010, simple assault again in 2015, assault inflicting serious injury in 2015, assault on a handicapped person in 2017, assault and battery in 2017, larceny of a dog in 2017 as mentioned previously, intoxicated and disruptive behavior in 2019, and finally first-degree trespassing in 2019. *Whitaker*, 201 N.C. App. at 206, 689 S.E.2d at 404.

Both of Defendant's felonies were proximate in time to Defendant's convictions in the present case and are evidence of Defendant's continuous willingness to violate the rights of others. Furthermore, Defendant's behavior does not reflect a history of responsible gun ownership. Rather, the first known instance of Defendant possessing a gun was when he utilized a revolver to kill two people in the present case. Lastly, Defendant did not voluntarily surrender a firearm to law enforcement as part of an effort to comply with the law. Instead, Defendant was charged with possession of a firearm by a felon after acquiring a revolver, posting pictures on social media with said revolver, and then utilizing the revolver to murder two individuals.

At bottom, the *Britt* factors undoubtedly weigh in favor of upholding the application of section 14-415.1 against Defendant as he has a demonstrated history of violence, victimizing others, and disregarding the law. Moreover, doing so is reasonable and consistent with the tradition of disarming individuals who pose a threat of violence towards others. *See Whitaker*, 201 N.C. App. at 206–07, 689 S.E.2d

at 405 ("It is not unreasonable to prohibit a convicted felon who has violated the law on numerous occasions . . . from possessing firearms in order to preserve 'public peace and safety.'" (citations omitted)).

Accordingly, we hold section 14-415.1 was constitutionally applied to Defendant. Being so, we hold section 14-415.1 is facially constitutional as well because Defendant has failed to show that there are "no set of circumstances under which the act would be invalid." *Bryant*, 359 N.C. at 564, 614 S.E.2d at 486 (citations and internal marks omitted).

## B. Phone Call

Defendant argues the trial court abused its discretion by admitting statements Defendant made during a phone call with his mother into evidence. Specifically, Defendant contends his statements were not relevant to any fact in question and were unduly prejudicial. We disagree.

### 1. *Rule 401*

Rule 401 of the North Carolina Rules of Evidence states that "relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C. R. Evid. 401 (2023) (cleaned up). Irrelevant evidence is inadmissible while "[a]ll relevant evidence is admissible unless otherwise provided by the [c]onstitution of the United States, by the Constitution of North Carolina, by Act of Congress, by Act of the General Assembly, or by the Rules

of Evidence." *State v. Washington*, 386 N.C. 265, 268, 900 S.E.2d 657, 659 (2024) (cleaned up). This threshold to admissibility is "relatively lax[,]" *State v. McElrath*, 322 N.C. 1, 13, 366 S.E.2d 442, 449 (1988), and we review the trial court's decision de novo, *State v. Triplett*, 368 N.C. 172, 175, 775 S.E.2d 805, 807 (2015). Moreover, the party challenging the evidence as improperly admitted must "show both error and that he was prejudiced by its admission." *State v. Anderson*, 200 N.C. App. 216, 220, 684 S.E.2d 450, 454 (2009) (internal marks omitted) (quoting *State v. Gappins*, 320 N.C. 64, 68, 357 S.E.2d 654, 657 (1987)).

Here, the trial court admitted over Defendant's objection portions of a phone call between Defendant and his mother during which Defendant states "[t]his is a hard time for our country, and you've got racist black people out here." In context, Defendant made this statement while his mother questioned his reasons for possessing and posting on social media a picture of a firearm despite his status as a felon.

The State's theory of the case was that, because both victims were peaceful individuals whom Defendant had never met that happened to be people of color, the murders were committed out of racial animus on Defendant's part. In support of its theory, the State pointed towards Defendant's statements and that one of the victims, Mr. Lucas, was black while the other victim, Mr. Vellingiri, was Indian but had a dark complexion—in fact, law enforcement thought he may have been black upon arrival at the scene.

Stated differently, the State argued, and we agree, Defendant's statements reflecting that he obtained a firearm because of "racist black people" were probative of his motive for committing the murders. *See State v. Fleming*, 350 N.C. 109, 130, 512 S.E.2d 720, 735 (1999) ("Evidence is 'relevant when it reveals a circumstance surrounding one of the parties and is necessary to understand properly their conduct or motives or if it allows the jury to draw a reasonable inference as to a disputed fact.'"). Moreover, "[i]n the context of a murder, evidence is relevant if it tends to shed light upon the circumstances surrounding the killing[.]" *State v. Garcia*, 358 N.C. 382, 416, 597 S.E.2d 724, 748 (2004) (citations and internal marks omitted). Thus, Defendant's statements shed light on the circumstances surrounding his purchase of a firearm and the subsequent murders he committed using the firearm.

Accordingly, Defendant's argument that his statements were irrelevant is without merit. Having determined so, we now review the trial court's determination that the statements probative value was not substantially outweighed by its prejudicial value. *Triplett*, 368 N.C. at 175, 775 S.E.2d at 807.

### 2. *Rule 403*

Even if evidence is admissible under Rule 401, it may still "be excluded if its probative value is substantially outweighed by the danger of unfair prejudice[.]" N.C. Gen. Stat. § 8C-1, Rule 403 (2019) (cleaned up). Generally, "evidence which is probative in the State's case will have a prejudicial effect on the defendant; the question is one of degree." *State v. Washington*, 141 N.C. App. 354, 367, 540 S.E.2d

388, 397 (2000) (citations and internal marks omitted). Rather, evidence will be excluded under Rule 403 where it has "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, on an emotional one." *State v. Baldwin*, 240 N.C. App. 413, 418, 770 S.E.2d 167, 171 (2015) (cleaned up).

The decision to include or "exclude evidence under Rule 403 is a matter left to the sound discretion of the trial court," *State v. Coffey*, 326 N.C. 268, 281, 389 S.E.2d 48, 56 (1990) (citation omitted), which we review for an abuse of discretion, *State v. Gillard*, __ N.C. __, __, 909 S.E.2d 226, 248 (2024); *see also Triplett*, 368 N.C. at 175, 775 S.E.2d at 807 ("We review relevancy determinations by the trial court de novo before applying an abuse of discretion standard to any subsequent balancing done by the trial court."). An abuse of discretion occurs where the trial court's decision is "'manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision.'" *Id.* (quoting *State v. Richardson*, 385 N.C. 101, 133, 891 S.E.2d 132, 163 (2023)). Moreover, a defendant must show "there is a reasonable possibility that, had the error not been committed, a different result would have been reached at the trial[.]" N.C. Gen. Stat. § 15A-1443 (2023).

Here, the record reflects the trial court's decision to admit Defendant's statement was not unsupported by reason or arbitrary, but rather the result of carefully balancing the statement's probative and prejudicial values. As explained above, Defendant's statements supported the State's theory of Defendant's motive for killing Mr. Lucas and Mr. Vellingiri. Additionally, the recording of Defendant's phone

call with his mother contained numerous other statements, including more detailed statements showing potential racial animus, such as that there were "racist people out there killing white people all over the place[,]" which the trial court did not admit because they would have been unduly prejudicial. *See State v. Miller*, 197 N.C. App. 78, 91, 676 S.E.2d 546, 554–55 (2009) ("This Court will not intervene where the trial court properly appraises the probative and prejudicial values of evidence under Rule 403." (citations omitted)).

Even assuming it was error to admit Defendant's statements, he cannot show prejudice because the State presented substantial and overwhelming evidence that Defendant committed the two murders. Specifically, the State showed Defendant purchased a revolver which was consistent with the firearm used in both murders as no shell casings were recovered, went to the scenes of both murders when they were committed, had gun-powder residue on his belongings, and likely had one victim's blood on his hat. In the face of this evidence, we cannot say there is a reasonable possibility that the jury would have reached a different verdict had the trial court not admitted Defendant's own statements as evidence of his motive. *See* N.C. Gen. Stat. § 15A-1443 ("A defendant is prejudiced . . . when there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial[.]")

Accordingly, the trial court did not err in determining the probative value of Defendant's statements was not substantially outweighed by their prejudicial value.

## III.    Conclusion

For the aforementioned reasons, we hold section 14-415.1 of the North Carolina General Statutes is both facially constitutional and constitutional as applied to Defendant.  Additionally, we hold Defendant received a fair trial, free from error.

NO ERROR.

Judges STROUD and CARPENTER concur.